## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ) | |
| ) | **Chapter 11** |
| **IN RE GARDEN RIDGE CORPORATION,** *et al.*, ) | |
| ) | **Case No. 04-10324 (KJC)** |
| **Debtors.** ) | **Jointly Administered** |
| ) | |
| ) | **Related Docket Nos:** |
| ) | **2064, 2066** |

### NOTICE OF APPEAL

Daniel Ferguson ("Ferguson"), by and through his undersigned counsel, Buchanan

Ingersoll PC, hereby appeals under 28 U.S.C. § 158(a)(1) from the Court's *Judgment,* entered

February 14, 2006 [D.I. 2066], and the *Memorandum of Opinion and Order* relating thereto,

entered on February 14, 2006 [D.I. 2064].

The names of the parties to the *Judgment* and *Memorandum*, and the names and

addresses of their respective counsel, are:

***Via Hand-Delivery***
David M. Klauder, Esq.
Office of the United States Trustee
844 King Street, Suite 2313, Lockbox 35
Wilmington, DE  119801
Tel:  302-573-6491

*Representing U.S. Trustee*

***Via Hand Delivery***
David M. Fournier, Esq.
David B. Stratton, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19899-1709
Tel:  (302) 777-6584

*Representing Official Committee of*
*Unsecured Creditors*

***Via Hand Delivery***
Joseph M. Barry, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Tel:  302-571-6600

*Representing the Debtor*

Dated: February 20, 2006
     Wilmington, DE               **BUCHANAN INGERSOLL PC**

                                     */s/ William Sullivan*_____
                                       William D. Sullivan (No. 2820)
                                       The Nemours Building
                                       1007 North Orange Street, Suite 1110
                                       Wilmington, Delaware  19801
                                       Tel: (302) 428-5500
                                       Fax: (302) 428-3996

                                       *Counsel for Daniel Ferguson*

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:                                    In Proceedings Under Chapter 11

GARDEN RIDGE CORPORATION,          Case No.: 04-10324
*et al.*,

Debtors.              JUDGE RANDOLPH BAXTER

## JUDGMENT

In Delaware, in said District, on this 10th day of February, 2006.

A Memorandum Of Opinion And Order having been rendered by this Court in this

matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Ferguson's

motion for relief from stay in order to effectuate a setoff is not well premised and is hereby

denied. Each party is to bear its respective costs.

IT IS SO ORDERED.

RANDOLPH BAXTER
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:

GARDEN RIDGE CORPORATION,
*et al.*,

Debtors.

In Proceedings Under Chapter 11

Case No.: 04-10324

JUDGE RANDOLPH BAXTER

## MEMORANDUM OF OPINION AND ORDER

Before the Court is the motion of Daniel Ferguson ("Ferguson") for relief from the automatic stay under § 362(d) of the United States Bankruptcy Code to the extent necessary to set off certain amounts owing from and owed to the Debtors.[1]

The Court acquires core matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(b). Upon an examination of the parties' respective briefs and supporting documentation, and after conducting a hearing on the matter, the following findings of fact and conclusions of law are hereby rendered:

\*

Garden Ridge Corporation and its jointly administered affiliate co-debtors (the "Debtors") operate home decor retailers with 35 stores in 13 states throughout the South, Midwest, and Mid-Atlantic regions of the United States. Garden Ridge Management, Inc. ("GRM") is a management services company that employs all of the staff and management utilized at the Garden Ridge stores. Garden Ridge, L.P. ("GRLP"), the entity that operates all of

---

[1] Garden Ridge, L.P., Garden Ridge Corporation, Garden Ridge Management, Inc., Garden Ridge Finance Corporation, Garden Ridge Investments, Inc., and Garden Holdings, Inc. (collectively, the "Debtors" or the "Reorganized Debtors").

the Garden Ridge stores, pays GRM a fee for the use of GRM's employees in its stores. GRM holds a one percent (1%) general partnership interest in GRLP, with the remaining 99% being held by Garden Ridge Investments, Inc..

On January 28, 2001, Ferguson executed an employment agreement (the "Employment Agreement") whereby he was to become a member of Garden Ridge's Executive Committee as the Senior Vice President - Supply Chain.[2]  The Employment Agreement provided that in the event that he was released without cause, Ferguson would receive one year of base salary. The Agreement also provided for the payment of certain relocation costs (including customary real estate commissions up to 6% maximum on the sale of Ferguson's existing house) in conjunction with Ferguson's move to Houston.

On January 31, 2003, due to a delay in the sale of his house in Michigan, Ferguson executed a promissory note in favor of GRLP in the principal amount of $250,000 (the "Note").[3] The Note became due and payable upon the earlier of (i) thirty (30) days after the closing of the sale of Ferguson's real property in Michigan, (ii) the date of Ferguson's termination of employment (with or without cause), and (iii) December 31, 2003. Since Ferguson's house remained unsold, the Note was renewed annually. At this time, it is undisputed that the full face amount of the Note remains due.

Ferguson was terminated on September 12, 2003. The parties disagree on whether Ferguson's termination was for cause. Ferguson has initiated a $310,000 cause of action against GRM and GRLP in state court in Texas (the "State Court Action") seeking payment of $250,000

---

[2] Exhibit A to Debtors' Objection.

[3] Exhibit C to Debtors' Objection.

in severance pay (comprising one year of base salary), and $60,000 in unpaid relocation costs.[4]

On February 2, 2004, the Debtors filed for protection under chapter 11 of the Bankruptcy Code. The schedules filed by GRM (the "GRM Schedules")[5] included an unliquidated claim of Ferguson related to the State Court Action. No accounts receivable from Ferguson were listed on the GRM Schedules. Because GRLP was a named defendant in the State Court Action, the schedules filed by GRLP (the "GRLP Schedules")[6] also included an unliquidated claim of Ferguson. The GRLP Schedules listed the Note payable from Ferguson.

On April 16, 2004, Ferguson filed an unsecured, non-priority claim in the amount of $310,000 (the "Claim").[7]

The consolidated chapter 11 plan of GRM and GRLP (the "Plan"), along with the other Garden Ridge entities, was confirmed on March 29, 2005.[8]

Ferguson asserts that the amount of $250,000 owed by Ferguson to GRLP on the Note should be setoff by the amount of $310,000 owed by the Debtors to Ferguson for severance fees and various unpaid relocation costs. Ferguson argues that the net result would place him in the position of an unsecured creditor for the $60,000 deficiency outstanding.

**

"A creditor who has the right to setoff may obtain relief from the automatic stay in order

---

[4] Exhibit D to Debtors' Objection.

[5] Exhibit E to Debtors' Objection.

[6] Exhibit F to Debtors' Objection.

[7] Exhibit G to Debtors' Objection.

[8] Exhibit 10 to Debtors' Post Hearing Memorandum.

to implement the setoff." *In re Dye*, 2004 WL 2249503, \*7 (Bankr. M.D. N.C. 2004); *In re Stienes*, 285 B.R. 360, 362 (Bankr. D. N.J. 2002) ("In order to exercise a valid right of setoff, a creditor must move for relief from the automatic stay under 11 U.S.C. § 362(d)."). "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Section 553(a) provides, in relevant part, that:

> this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a). "The burden of proof is on the party asserting the right to set-off." *E.g., In re Lason, Inc.*, 314 B.R. 296, 305 (Bankr. D. Del. 2005); *In re Bennett Funding Group, Inc.*, 212 B.R. 206, 212 (B.A.P. 2nd Cir. 1997). Whether to allow setoff is a determination within the sound discretion of this Court. *E.g., In re Continental Airlines*, 218 B.R. 324, 328 (D. Del. 1997) (citing *United States, Internal Revenue Service v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983)); *In re HAL, Inc.*, 196 B.R. 159, 161 (B.A.P. 9th Cir. 1996) ("Whether or not to allow setoff pursuant to § 553 is left to the sound discretion of the bankruptcy court."); *In re Bangert*, 226 B.R. 892, 903 (Bankr. D. Mont. 1998).

To enforce a setoff right, "[a creditor] must establish that (1) it has a right of setoff under nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553." *In re*

4

*HAL, Inc.*, 196 B.R. at 161; *In re Atanasov*, 221 B.R. 113, 117 (D. N.J. 1998) ("Courts may look to state law in order to determine whether a setoff has occurred, however, the granting or denial of the right to a setoff depends upon the terms of section 553, and not upon the terms of state statutes or laws."); *In re Tarbuck*, 318 B.R. 78, 81 (Bankr. W.D. Pa. 2004) ("The threshold question in every case involving an asserted right of setoff is the source and validity of the underlying right.").

To determine which state's law to apply, the Court turns to Delaware choice of law rules. *E.g., In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005); *In re Eagle Enterprises, Inc.*, 223 B.R. 290, 292 (Bankr. E.D. Pa. 1998) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941)) ("In most instances bankruptcy courts rely on the rule observed by federal district courts hearing diversity cases and use the choice of law rules of the forum state."). The Note includes a choice of law provision stating that it is governed by Texas law. Ferguson's action is a breach of contract claim brought in Texas state court, and arising from an employment agreement executed and performed in Texas. Therefore, the Court turns to Texas law to determine whether Ferguson has a right to setoff. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004) ("Under Delaware [choice of law rules], express choice of law provisions in contracts are generally given effect."); *Matter of Deemer Steel Casting Co., Inc.*, 117 B.R. 103, 107 (Bankr. D. Del. 1990) ("In cases sounding in contract, Delaware's conflicts of law rules require application of the law of the state with the most significant contacts."). Therefore, it is clear, and undisputed by the parties, that Texas laws of setoff applies.

Under Texas law:

> Setoff is a form of equitable counterclaim which brings together obligations of
> parties opposing each other and, by judicial action, makes each obligation
> extinguish the other. The object of equitable setoff is to adjust the demands
> between the parties and allow a recovery of only the balance that is due. In order
> for one demand to be set off against another, both demands must mutually exist
> between the same parties. Indeed, setoff is proper only where demands are
> mutual, between the same parties, and in the same capacity or right.

*Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994)

(citations omitted). Similarly, "section 553(a) recognizes and preserves rights of setoff where

four conditions exist: (1) The creditor holds a 'claim' against the debtor that arose before the

commencement of the case; (2) The creditor owes a 'debt' to the debtor that also arose before the

commencement of the case; (3) The claim and debt are 'mutual'; and (4) The claim and debt are

each valid and enforceable." *See, e.g.,* 3 Collier on Bankruptcy ¶ 553.01[1]; *In re Czyzk*, 297

B.R. 406, 409 (Bankr. D. N.J. 2003); *In re APF Co.*, 264 B.R. 344, 354 (Bankr. D. Del. 2001).

The effect of setoff is to elevate "an unsecured claim to secured status, to the extent that

the debtor has a mutual, pre-petition claim against the creditor." *Lee v. Schweiker*, 739 F.2d 870,

875 (3d Cir.1984); *In re Health Management Ltd. Partnership*, 332 B.R. 360, 363-64 (Bankr.

C.D. Ill. 2005).

***

The first two elements of setoff are uncontested in this case. Both debts arose pre-

petition. The parties have also agreed to separately brief and argue the validity and enforceability

of the Ferguson claim at a separate time.[9] Therefore, the issue to be determined by the Court at

this time is whether Ferguson has met his burden of showing by a preponderance of the evidence,

that the Note to GRLP and the state court action against GRLP and GRM are "mutual" for the

---

[9] Debtors' Objection, at 8 n.3.

6

purposes of Texas law and § 553.

****

"To establish its right to setoff under Section 553 of the Bankruptcy Code, the creditor must show mutuality of obligation. *In re Winstar Communications*, 315 B.R. 660, 662-63 (D. Del. 2004). "Mutuality of obligations is determined by state law." *In re Czyzk*, 297 B.R. at 409. Under Texas and federal law, "[m]utuality of obligation exists when debts are owing between the same parties in the same right or capacity." *E.g., Mullen v. Cheatham,* 1999 WL 1095917, *3 (Tex. App. 1999); *Brook Mays Organ Co., Inc. v. Sondock*, 551 S.W.2d 160, 166 (Tex. Civ. App. 1977); *In re Wilson*, 69 B.R. 960, 965 (Bankr. N.D. Tex. 1987); *see also In re Winstar Communications*, 315 B.R. at 662-63; *In re GPR Holdings, L.L.C.* 2004 WL 3007080, *4 (Bankr. N.D. Tex. 2004). "For mutuality to exist, each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987); *In re Taylor Motors*, 60 B.R. 760, 763 (Bankr. D. Nev. 1986) ("Mutuality of the debt and claim means that the creditor is indebted to the debtor who likewise owes a debt to the creditor . . .."). For setoff purposes, the mutuality requirement is strictly construed. *E.g., In re Bennett Funding Group, Inc.*, 212 B.R. at 212; *In re Clemens*, 261 B.R. 602, 606 (Bankr. M.D. Pa. 2001).

A triangular setoff occurs where "A attempts to offset an obligation owed by B against B's debt to C. Setoffs of this kind are not permitted under section 553." *In re KZK Livestock, Inc.*, 221 B.R. 471, 480 (Bankr. C.D. Ill. 1998); *In re HAL, Inc.*, 196 B.R. at 163 ("The general rule, however, holds that triangular setoffs among related parties do not meet the mutuality requirement."); *In re U.S. Aeroteam, Inc.*, 327 B.R. 852, 864 (Bankr. S.D. Ohio 2005)

7

("Consequently, a 'triangular setoff,' . . . is prohibited because there is no mutuality of debt between two parties.").

Two exceptions have been recognized to the principle that triangular setoffs lack the requisite mutuality for setoff.  First, courts have held that setoffs involving separate governmental agencies may satisfy the mutuality requirement under § 553.  *E.g., In re HAL, Inc.*, 196 B.R. at 163; *In re U.S. Aeroteam, Inc.*, 327 B.R. at 864 n.9 (citing *Butler v. United States (In re Butler)*, 1996 WL 33403850 (Bankr. S.D. Ga. 1996)) ("This case does not require the court to address triangular setoffs involving separate government agencies.  Under certain circumstances, these types of triangular setoffs have been allowed."); *In re Nuclear Imaging Systems, Inc.*, 260 B.R.at 733-34 (citing *Cherry Cotton Mills v. United States*, 327 U.S. 536 (1946)) ("[T]he vast majority of courts have concluded, within the confines of a bankruptcy case, that all agencies of the United States constitute a single 'unitary creditor' for purposes of setoff under section 553.").  The second exception is that an express agreement between the related entities may created mutuality for setoff purposes.  *E.g., In re U.S. Aeroteam, Inc.*, 327 B.R. at 865 ("Generally, courts are in agreement that an assignment of rights can create mutuality for setoff purposes.").

*****

Ferguson argues that mutuality exists in this case, since 1) Ferguson alleges that he was employed by Garden Ridge, collectively, and not solely by GRM, as alleged by the Debtors; 2) that GRM and GRLP were, for practical purposes, a single entity, and 3) the several entities of Garden Ridge were consolidated into a single entity, the Reorganized Debtor, through the Plan. Finally, Ferguson argues that even if a triangular set-off existed, these circumstances fall within a recognized exception permitting setoff, since the parties intended that the obligations of the Note

8

to GRLP would compensate GRM for making the Loan.

The Debtors, however, argue that the debts are not mutual, asserting this situation presents an impermissible "triangular setoff," since Ferguson was employed by GRM, and the note was payable to GRLP. Alternatively, the Debtors argue that Ferguson, as a fiduciary of the Debtors, cannot effectuate a setoff.

### A.    **Mutuality**

#### 1.    **Identity of Ferguson's Employer**

The parties dispute whether GRM was Ferguson's employer, or whether Ferguson was employed collectively by the various entities of Garden Ridge, including GRLP.

The Debtors argue that the requisite mutuality does not exist, since Ferguson was employed by GRM, and the note was payable to GRLP. The Debtors rely primarily on Ferguson's paychecks and W-2 Form, which clearly state that "Garden Ridge Management, Inc." was Ferguson's employer. The parties do not dispute that GRM and GRLP were, at all times prior to filing, distinct legal entities.

Ferguson argues that despite the fact that GRM appeared on the paychecks and W-2 Form, GRM's payroll account was entirely funded and controlled by GRLP. Ferguson also notes that GRLP was the entity responsible for severance obligations of the Debtors. Ferguson notes that the Employment Agreement refers only to "Garden Ridge," and makes no mention of GRM, or any specific entity of the Debtors. Ferguson offers his own testimony that he was unaware of the specific entity that was his true employer. Finally, contemporaneously with the Note, Ferguson received a letter which states:

Contemporaneously with the execution of this letter, you are executing the Note,

9

and Garden Ridge, L.P. (the "Company") is making the loan to you evidenced by the Note. You currently are serving as an employee of the Company. . . .

Sincerely,

GARDEN RIDGE, L.P.,

By:   Garden Ridge Management, Inc.,
General Partner[10]

Ferguson's arguments on this point are misguided. Ferguson's subjective belief, however well founded, does not overcome the legal conclusion that the debts are not mutual. For independent reasons, Garden Ridge created and maintained GRM and GRLP as distinct legal entities. According to his paychecks and his W-2 tax form, Ferguson was paid, and was formally employed, by GRM. The assertion that GRLP controlled the payroll account does not change this legal status. Ferguson cannot create the required mutuality by naming GRLP as a defendant in the State Court Action, despite the fact that his cause of action arose from his employment by GRM.

It is settled law that a triangular setoff exists even where the parties are related subsidiaries. *E.g., In re HAL, Inc.*, 196 B.R. at 163 ("Thus, in the corporate context, '[i]t is well-established that one subsidiary may not set off a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary.'"); *Depositors Trust Co. v. Frati Enterprises*, 590 F.2d 377, 379 (1st Cir.1979)) ("It is well established that one subsidiary may not setoff a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary."); *Inland Steel Co. v. Berger*, 327 F.2d 401 (7th Cir.1964) ("This argument appears to be supported by those cases which hold that a parent corporation may not set-off a debt owed its subsidiary by an entity

---

[10] Exhibit 2 to Ferguson's Post-Hearing Brief.

against a debt it owes to the same entity."); *In re Sentinel Products Corp.*, 192 B.R. 41, 46 (N.D.

N.Y. 1996) (citing *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615. 618

n.2 (2d Cir. 1989); *In the Matter of Elcona Homes Corp.*, 863 F.2d 483, 486-87 (7th Cir. 1988);

*Depositor's Trust Co. of Augusta v. Frati Enters.*, 590 F.2d at 379) ("a subsidiary's debt may not

be setoff against the credit of a parent or other subsidiary, or vice versa, because no mutuality

exists under the circumstances."); *In re KZK Livestock, Inc.*, 221 B.R. at 480 ("Thus, two

entities, even if related, may not aggregate their debts and claims for setoff purposes. For

example, a subsidiary may not offset a debt to the debtor against a debt the debtor owes to

another related subsidiary····"); *In re Baja Boats, Inc..* 1997 WL 811694, *7 (Bankr. N.D. Ohio

1997) ("The primary requirement of mutuality is that the relevant claim and debt must exist

between the same parties. Therefore, two entities, even if related, may not aggregate their debts

and claims for setoff purposes."); *In re Hill Petroleum Co.*, 95 B.R. 404, 411-12 (Bankr. W.D.

La. 1988) (citing 4 COLLIER ON BANKRUPTCY § 553.04[2] at 553-19 (1988)); *Matter of

Fasano/Harriss Pie Co.*, 43 B.R. 864, 870 (Bankr. W.D. Mich. 1984) (citations omitted) ("The

same rule applies with a parent corporation and a wholly owned subsidiary. Since an

intercorporate relationship is insufficient to meet the mutuality requirement in an offensive claim

of setoff by a member at the corporate family against a third party, it likewise is insufficient to

meet the mutuality requirement in a third party claim of setoff against a member of the corporate

family."); *In re Virginia Block Co.*, 16 B.R. 560, 562 (Bankr. W.D. Va. 1981) ("Furthermore, a

corporation may not setoff the right of an associated, wholly owned corporation, even though

local custom permits such a setoff.").

This principle has also been applied in situations involving partners in partnerships. *See*

11

*Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (finding that the "premise that the debt owed to a partnership creditor [ ] may be set off against the claim of an individual partner [ ] against the partnership creditor does not find any clear support in the decided cases."); *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 733 (Bankr. E.D. Pa. 2000) (citing *Gray v. Rollo*, 85 U.S. [18 Wall.] 629 (1873)) (mutuality for purposes of setoff is absent when a partnership has a claim against an individual but the individual has a claim against a partner of the partnership); *In re Ingersoll*, 90 B.R. 168, 171 (Bankr. W.D. N.C. 1987) ("This is consistent with other authorities which have found no mutuality in situations involving parent corporations and subsidiaries, sister corporations, and partnerships and individual partners."); *In re Virginia Block Co.*, 16 B.R. at 562 ("Strict construction of the element of mutuality means that a debt due an individual partner cannot be setoff against a claim of the partnership.").

This case does not present a permissible triangular setoff based upon an agreement between the related entities. Although Ferguson argues that the note to GRLP was intended to directly, or indirectly, benefit GRM, he has not alleged that any formal or express agreement between GRM and GRLP existed. *Depositors Trust Co. of Augusta v. Frati Enterprises, Inc.*, 590 F.2d at 379 ("Thus, although Bangor and Augusta are basically the same bank, we cannot treat them as such, in the absence of an agreement by the bankrupt to treat the two banks as one."); *In re Hill Petroleum Co.*, 95 B.R. at 412 ("The narrow exception to the rule against three party. "triangular" setoffs, occurs where there is a formal agreement by the debtor that two entities may aggregate debts owed to and from the debtor."); *In re Lang*, 1988 WL 110429, *5 (Bankr. W.D. Pa. 1988); *In re Balducci Oil Co., Inc.*, 33 B.R. 847, 853 (Bankr. D. Colo. 1983) (citations omitted) ("The courts have found mutuality between three parties, as a matter of

contract law, where there was an express contractual agreement clearly evincing the intent of the parties to treat the parent and subsidiary as one entity.").

Therefore, the formal legal relationship between the parties herein presents an impermissible triangular setoff, as the required mutuality of the parties does not exist. To the extent that Ferguson argues that the entities operated as a single entity, and therefore should be considered to be as the same entity for setoff purposes, such arguments are addressed below.

## 2.    Whether GRM and GRLP Should Be Treated as One Entity

Ferguson argues that Garden Ridge, as a collective unit, operated in a manner such that the Debt and the Ferguson Claim involve the same entity. Therefore, Ferguson argues that the Court should disregard the fact that GRM and GRLP were separate legal entities. Texas law provides that in several broad instances, the corporate entity may be disregarded, including "1) when the corporation is the alter ego of its owners or shareholders; 2) when the corporation is used for illegal purposes; and 3) when the corporation is used as a sham to perpetrate a fraud. " *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629-30 (5th Cir. 1994) (citing *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993)).

> Among the reasons recognized in the past for disregarding the corporate fiction are: (1) when it is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where it is used to evade an existing legal obligation; (4) where it is employed to achieve or perpetrate a monopoly; (5) where it is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Carlson Mfg., Inc. v. Smith*, 2005 WL 2878033, *3 (Tex. App. 2005); *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986).

The purpose of disregarding the corporate entity in these instances is to prevent fraud,

illegality, or to avoid an otherwise inequitable result. *See, e.g., Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d at 630 ("The purpose of disregarding the corporate fiction is to prevent the corporation's owners from using the corporate entity as a cloak for fraud or illegality."); *Carlson Mfg., Inc. v. Smith*, 2005 WL 2878033, *3 ("However, the purpose of the single business enterprise theory, like the alter ego theory and other doctrines designed to pierce the corporate veil, is to prevent an inequitable result."); *SSP Partners v. Gladstrong Investments (USA) Corp.*, 2005 WL 1693765, *1 (Tex. App. 2005) ("Texas recognizes the 'single business enterprise doctrine' to prevent an entity from relying upon corporate form to evade an existing debt or legal obligation."); *Goldstein v. Mortenson*, 113 S.W.3d 769, 780 (Tex. App. 2003) ("We disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result."). Therefore, the corporate entity will not be disregarded unless there are compelling reasons to do so. *See, e.g., Barrera v. Roscoe, Snyder & Pac. Ry. Co.*, 385 F.Supp. 455, 461 (N.D. Tex. 1973) (quoting *Ruberoid Co. v. North Tex. Concrete Co.*, 193 F.2d 121, 122 (5th Cir. 1952)) ("The doctrine of separate entity fills a useful purpose in business life and the courts are hesitant to disregard it unless the facts presented demonstrate some misuse of the corporate privilege or the need of limiting it in order to do justice."); *Cementos de Chihuahua, S.A. de C.V. v. Intermodal Sales Corp.*, 162 S.W.3d 581, 585-86 (Tex. App. 2005) (quoting *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 374 (Tex.1984)) ("disregard of the 'legal fiction of corporate entity' is 'an exception to the general rule which forbids disregarding corporate existence.'"); *Carlson Mfg., Inc. v. Smith*, 2005 WL 2878033, *3 ("Because Texas law presumes

14

that two separate corporations are distinct entities, the courts will not disregard the separate legal identities of corporations unless that relationship is used to defeat public convenience, to justify wrongs such as violation of the anti-trust laws, to protect fraud, or to defend crime."); *Tigrett v. Pointer*, 580 S.W.2d 375, 392 (Tex. Civ. App. 1978) ("The general rule prohibits disregard of the corporate entity by a court unless that corporate entity is used as a means of committing fraud or to justify wrong in the sense of a violation of law or of public policy."); *King v. Tubb*, 551 S.W.2d 436, 445 (Tex. Civ. App. 1977) ("As a general rule, the corporate entity will not be disregarded unless there are compelling reasons to disregard."). Texas courts have been particularly hesitant to disregard the corporate entity in cases involving contracts. *Mancorp, Inc. v. Culpepper*, 836 S.W.2d 844, 847-48 (Tex. App. 1992) ("[T]he overriding public policy necessary to disregard the corporate entity must be more stringent in contract cases than in tort cases because in contract cases the plaintiff has an opportunity to select the entity with which he deals as opposed to tort cases in which no such choice exists . . .. In such a situation, a court should not resort to the drastic exception to the general rule that the corporate entity must remain inviolate.").

Texas law places the burden of showing that the Court should disregard the corporate fiction on the party seeking to treat the entities as a single unit. *E.g., PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 2005 WL 1979102, *4 (Tex. App. 2005) ("The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation."); *Wortham v. Dow Chemical Co.*, 2005 WL 2786996, *4 (Tex. App. 2005); *Mancorp, Inc. v. Culpepper*, 836 S.W.2d at 847 (The "burden of proof is on the plaintiff to prove harm in order to pierce the corporate veil.").

15

Ferguson presents persuasive evidence to show that the Debtors' operations overlapped

substantially. This Court found that such evidence was sufficient to show that the Debtors' cases

should be substantively consolidated, stating:

> In the Martin Declaration, Martin attested to the following facts, which were not
> controverted at the Confirmation Hearing: (a) the Debtors share common
> management, (b) the Debtors prepare and disseminate consolidated financial
> reports, (c) the Debtors file consolidated federal tax returns, (d) the Debtors utilize
> a centralized cash management system, and (e) each of the Debtors, other than
> Garden Holdings, Inc., was a co-obligor under the Debtors' pre-petition working
> capital facility and the DIP Credit Facility. Based on the Martin Declaration, the
> Court finds that there is a substantial identity and inseparable relationship between
> the Debtors and that the benefits of consolidation outweigh any harm or prejudice
> to creditors."[11]

The Debtors do not argue that such evidence undisputedly establishes that there was substantial

identity and inseparable relationship between GRM and GRLP. In order for the Court to

disregard the separately maintained corporate entities, however, Ferguson must still show that the

Debtors misused the corporate privilege, or that it would be necessary to avoid an inequitable

result.

> [T]here must be something more than mere unity of financial interest, ownership
> and control for a court to treat the subsidiary as the alter ego of the parent and
> make the parent liable for the subsidiary's actions. Merely showing a blending of
> activities between the parent and subsidiary, such that they may have had some or
> all of the same directors or officers, filed consolidated income tax returns, shared
> the same corporate logo, conducted inter-corporate business, or officed in the
> same building, is not alone sufficient to make the parent liable.
>
> . . . This was not sufficient to show that the parent/subsidiary relationship had
> been used as part of a basically unfair device to achieve an inequitable result, or
> that the subsidiaries were organized and operated as mere tools or business
> conduits of the parent.

*Trailways, Inc. v. Clark*, 794 S.W.2d 479, 489-90 (Tex. App. 1990); *Mortgage and Trust, Inc. v.*

---

[11] Exhibit 17 to Ferguson's Post-Hearing Brief.

*Bonner & Co., Inc.*, 572 S.W.2d 344, 348-49 (Tex. Civ. App. 1978) ("As a general rule, two or more corporations are separate and distinct legal entities, and the separate identity of each will not be disregarded in order to impose liability on one corporation for the acts of another corporation merely because of: a) overlapping stock ownership; b) a duplication of some or all of the directors or officers; or c) an exercise of the control that stock ownership gives to stockholders.").

To the extent that Ferguson argues that GRM is the "alter ego" of GRLP, Ferguson has not alleged that the Debtors maintained GRM and GRLP as separate entities for fraudulent purposes. Under Texas law, the alter ego doctrine requires a showing of fraud. *North American Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 119 (Tex. App. 2001) ("[T]he 'alter ego' theory generally involves proof of fraud, i.e., proof that the corporation is organized and operated as merely a tool or business conduit of another corporation. At a minimum, '[t]he plaintiff must prove that he has fallen victim to a basically unfair device by which [the subsidiary] has been used to achieve an inequitable result.'"); *see also In re Carrousel Motels, Inc.*, 160 B.R. 993, 1002 (Bankr. S.D. Ohio 1993) ("[T]he alter ego doctrine by its nature does not admit of mutuality; the doctrine may not be used as a shield. That is, one may not disregard corporateness unless there has been misuse of corporateness."); *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 398-99 (Bankr. D. Minn. 1985) ("Thus, as a matter of corporate law, without alleging fraud or some other wrong, Petco will not be allowed to disregard Pinion's corporateness to establish mutuality of obligation.").

Alternatively, Ferguson argues that GRM and GRLP were operated as a single entity, and therefore should be treated as such for setoff purposes. "Texas recognizes the 'single business

17

enterprise doctrine' to prevent an entity from relying upon corporate form to evade an existing

debt or legal obligation." *SSP Partners v. Gladstrong Investments (USA) Corp.*, 169 S.W.3d at

43.

> Factors to be considered in determining whether separate corporations should be
> treated as one enterprise include: (1) common employees; (2) common offices; (3)
> centralized accounting; (4) payment of wages by one corporation to another
> corporation's employees; (5) common business name; (6) services rendered by the
> employees of one corporation on behalf of another corporation; (7) undocumented
> transfers of funds between corporations; and (8) unclear allocation of profits and
> losses between corporations. . . .

*Carlson Mfg., Inc. v. Smith*, 2005 WL 2878033 at \*3.

Although Ferguson offers evidence of the close relationship between GRM and GRLP

which may warrant application of these doctrines in other contexts, he has not shown that the

corporate entity should be disregarded for setoff purposes. The single business enterprise theory,

and other analogous doctrines, have been enforced by Texas courts to find that a master servant

relationship existed for the purposes of imposing liability, or for purposes of determining

jurisdiction and other procedural matters. *See Id. Carlson Mfg., Inc. v. Smith*, 2005 WL

2878033, \*3; *Newspapers, Inc. v. Love*, 380 S.W. 2d 582, 590 (Tex. 1964). There is no apparent

use of the doctrine to create mutuality for setoff purposes, and such a use does not fall within the

recognized categories in which Texas courts have determined that the corporate entity should be

disregarded. Such a use would be inappropriate in this case, since denying setoff would not

allow either party to evade an existing legal obligation or alter the legal rights of the parties, nor

does Ferguson allege that the Debtors have created separate legal entity for fraudulent or

wrongful purposes. *See In re Vehm Engineering Corp.*, 521 F.2d 186, 190-91 (9th Cir. 1975)

("The Referee specifically found that although AIF and TWF were controlled and dominated by

18

the same person, the two corporations 'were at all relevant times separate legal entities.' Hence,

the debts are not 'mutual' and may not be offset against each other."); *In re Fairfield Plantation,*

*Inc.*, 147 B.R. 946, 954-55 (Bankr. E.D. Ark. 1992) ("In light of the absence of evidence that

FAC was formed to defeat justice, perpetrate fraud, or to evade contractual or tort responsibility

this Court, applying Georgia law, finds that FAC has a separate corporate identity from that of

FPI. Accordingly, the party against which PEGI has a claim (FPI) is different from the party to

which PEGI owes a debt (FAC) and mutuality does not exist."). In this case, Ferguson could

maintain his state court action, and his legal rights would not be otherwise affected.

Therefore, Ferguson has not provided a persuasive basis to show that the Court should

ignore the fact that GRM and GRLP are distinct legal entities.

### 3.   Substantive Consolidation to Create Mutuality

Ferguson argues that the substantive consolidation of the Debtors created the necessary

mutuality. The Plan states,

> Nothing contained in this Plan or the Confirmation Order shall be deemed a
> waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other
> legal or equitable defense that the Debtors had immediately prior to the Petition
> Date that is not specifically waived or relinquished by this Plan.[12]

The Plan also states that

> On the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be
> substantively consolidated for all purposes related to the Plan, including, without
> limitation, for purposes of voting, confirmation, and distributions. . . .
>
> Such substantive consolidation shall not (other than for purposes related to the
> Plan) affect (i) the legal and corporate structure of the Reorganized Debtors . . ..[15]

---

[12]  Plan, at 36.

[15]  Plan, at 25-26.

19

The language of the Plan states that the Debtors retained all defenses that they held prior to the

Petition date. Ferguson does not suggest that the GRM and GRLP entities were consolidated

prior to the time of the subject transactions. There is no language in the Plan which would

suggest that substantive consolidation should be given retroactive effect. "The substantive

consolidation of several estates means one thing and one thing only-that all assets of the several

entities are pooled and all creditors of the several entities are entitled to share in the pooled assets

in accord with their respective rights. It would certainly be a violation of due process if the order

of substantive consolidation would operate to destroy defenses and rights which existed prior to

the entry of the order of substantive consolidation." *In re Murray Industries, Inc.*, 125 B.R. 314,

317 (Bankr. M.D. Fla. 1991); *In re Century Electronics Mfg., Inc.*, 310 B.R. 485, 493 (Bankr. D.

Mass. 2004) ("Moreover the Defendant's argument that the confirmation order provides for

retroactive substantive consolidation is incorrect. The language is forward-looking. It was

intended for ease of administration, not as an opportunity for the Defendant to enlarge its new

value defense after the fact. It would be unfair to burden the consolidated estate with a *nunc pro*

*tunc* application that was not contemplated when the Confirmation Order entered."). As stated in

the Plan, substantive consolidation was for certain prospective purposes related to the Plan. One

of those purposes was not to create mutuality so that Ferguson could enjoy the benefits of setoff.

## B.   **Ferguson as a Fiduciary**

Finally, the Debtors argue that since Ferguson was an executive of Garden Ridge, he was

subject to certain fiduciary duties, and is therefore barred from seeking to effectuate a setoff.

Although it is not necessary, as Ferguson has failed to meet the mutuality requirement of setoff,

this argument of the Debtors is not applicable in this instance. "[W]here a debt arises from a fiduciary duty or is in the nature of a trust, courts have held that there is no mutuality for setoff purposes. . . . In other words, setoff will not be permitted where granting it would have the effect of excusing or evading the [fiduciary] obligation." *In re Luz Intern., Ltd.*, 219 B.R. 837, 848 (B.A.P. 9th Cir. 1998) (citations omitted); *In re World Access, Inc.*, 324 B.R. 662, 685 (Bankr. N.D. Ill. 2005) (citing *Libby v. Hopkins*, 104 U.S. 303 (1881)) ("Where the liability of one claiming a set-off right arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts and claims does not exist, and such persons may not set-off a debt owing from the debtor against such liability."); *In re Tarbuck*, 304 B.R. at 721 ("For mutuality to exist, the debts must exist between the same parties in the same capacity, i.e., each must owe the other in his own name and not as a fiduciary."). "The rationale of this rule is simply that the liability arising from a fiduciary duty is entirely independent of the debt owing from the bankrupt." *Western Dealer Management, Inc. v. England, (In re Bob Richards Chrysler - Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir.1973).

The fact that one of the parties has a fiduciary duty in some context, however, does not necessarily preclude mutuality. *In re Fox Bean Co., Inc.*, 287 B.R. 270, 287 (Bankr. D. Idaho 2002) (citing 5 COLLIER ON BANKRUPTCY ¶¶ 553.03[3][b] and 553.03[3][c][ii]) ("the existence of a fiduciary relationship need not prevent mutuality"). A distinction must be drawn between different types of fiduciary relationships. "First, mutuality may be found if setoff would not violate the fiduciary obligation in question, as in the case of certain types of security deposits. Second, mutuality may exist if the party asserting the right of setoff is not the one acting as a fiduciary. Third, the rule does not prevent setoff if the obligations sought to be offset between

21

the parties are unrelated to either party's fiduciary responsibilities." 5 COLLIER ON BANKRUPTCY ¶¶ 553.03[3][c][i] (footnotes omitted); *Allegaert v. Perot*, 466 F.Supp. 516, 519 (S.D.N.Y. 1978).

In this case, the Note did not arise out of Ferguson's fiduciary duty.  Although Ferguson received a loan in conjunction with his moving expenses, it was not incurred as an exercise of his fiduciary duties.  The fact, alone, that Ferguson was in a position charged with certain fiduciary duties does not *per se* ban him from asserting any right to setoff.

******

Accordingly, Ferguson's motion for relief from stay in order to effectuate a setoff is not well premised and is hereby denied.  Each party is to bear its respective costs.

**IT IS SO ORDERED.**

Dated, this /0th day of
February, 2006.

RANDOLPH BAXTER
UNITED STATES BANKRUPTCY
JUDGE

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

Clerk of the Court
824 Market Street
Wilmington  DE  19801
(302) 252-2900

Date:  March 31, 2006

To:    Peter Dalleo, Clerk
       U. S. District Court, District of Delaware
       U. S. Courthouse - 844 King Street
       Wilmington  DE  19801

Re:    Garden Ridge Corporation et al
       Case No. 04-10324 (KJC)
       AP-06-25

       Enclosed please find the bankruptcy Record on Appeal  # AP-06-25.


                                          Sincerely,

                                          **David Bird, Clerk**

By:  _/s/ Ken Brown___
          Deputy Clerk


__X__  Filing fee paid on  2/20/06
_____  Filing fee not paid


NOTE: As of 3/31/06 Appellee has filed no designations.

## <u>TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT</u>

Case Number: **04-10324 (KJC)**
Deputy Clerk Transferring Case: Kenneth Brown 302 252 2900 x5126
Case Type: **Appeal - AP-06-25**

### <u>Order, Date Entered and Issues</u>

Order Denying Motion for Relief from Stay (related document(s) 2064 ) Order Signed on 2/10/2006. (DKP, ) (Entered: 02/14/2006)

| | |
|---|---|
| **Debtors:** | Garden Ridge Corporation |
| **Counsel:** | Joseph M Barry , Esq. |
| | Young Conaway Stargatt & Taylor LLP |
| | The Brandywine Bldg 17 Fl |
| | 1000 West St |
| | Wilmington, DE 19899 |
| **Telephone:** | (302) 571 6600 |

| | |
|---|---|
| **Appellant(s):** | Daniel Ferguson |
| **Counsel:** | William Sullivan, Esq |
| | Buchanan Ingersoll PC |
| | The Nemours Bldg |
| | 1007 North Orange St Suite 1110 |
| | Wilmington, DE 19801 |
| **Telephone:** | (302) 428 5500 |

| | |
|---|---|
| **Appellee:** | Garden Ridge Corporation |
| **Counsel:** | Joseph M Barry , Esq. |
| | Young Conaway Stargatt & Taylor LLP |
| | The Brandywine Bldg 17 Fl |
| | 1000 West St |
| | Wilmington, DE 19899 |
| **Telephone:** | (302) 571 6600 |