## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE GARDEN RIDGE CORPORATION, *et al.*,   )

                                             )     Chapter 11
          Debtors.                           )     Bankruptcy Case 04-10324
                                             )     Jointly Administered
_____)

### DANIEL FERGUSON,

### Appellant,

v.

### GARDEN RIDGE CORPORATION, *et al.*

### Appellees.

### CASE NO. 06-CV-00213 (GMS)

---

### APPELLANT DANIEL FERGUSON'S OPENING BRIEF ON APPEAL

---

**BUCHANAN INGERSOLL PC**
William D. Sullivan (#2820)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
Tel:  (302) 428-5500
Fax:  (302) 428-3996

Dated:  June 30, 2006

*Counsel for Appellant*
*Daniel Ferguson*

## TABLE OF CONTENTS

I.    STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ..........................1

II.   STATEMENT OF THE ISSUES..................................................................................2

III.  STANDARD OF REVIEW ...........................................................................................3

IV.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .............4

V.    SUMMARY OF ARGUMENT ......................................................................................6

VI.   STATEMENT OF FACTS.............................................................................................9

VII.  ARGUMENT................................................................................................................11

      A.    The Bankruptcy Court Erred as a Matter of Fact and of Law by Failing to
            Acknowledge GRLP's Conclusive Admission of Mutuality of Obligation
            Via the Loan Agreement.......................................................................................12

      B.    The Bankruptcy Court Erred in Holding that the Substantive
            Consolidation of the Debtors was not Sufficient to Create the Mutuality
            Required for Set Off.............................................................................................14

      C.    There is No Lack of Mutuality" Because The Debtors Acted as One Entity
            for Purposes Including the Employment of Mr. Ferguson ...................................17

            i.    Mr. Ferguson's Employment Documents....................................................18

            ii.   Debtors' Filings on its Financial Structure.................................................19

            iii.  The Debtors Statements and Schedules Confirm that Executive
                  Severance Pay Obligations were the Responsibility of Garden
                  Ridge, L.P. ................................................................................................20

            iv.   The Debtors' Payroll Account.....................................................................20

      D.    The Bankruptcy Court Erred in Failing to Apply Judicial Estoppel.....................23

V.    CONCLUSION ...........................................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Diamond, Rash, Leslie & Smith,*
    959 S.W.2d 646 (Tex.App.-El Paso, 1997) ................................................................ 24

*Bandy v. First State Bank,*
    835 S.W.2d 609 (Tx. 1992) ........................................................................................ 12

*Depositors Trust Co. v. Frati Enters.,*
    590 F.2d 377 (1st Cir., 1979)..................................................................................... 14

*Equibank v. Lang Machinery [In re Lang Machinery Corp.],*
    1988 WL 110429 (Fitzgerald, J., Bankr.W.D.Pa. October 19, 1988) ......................... 14

*I.R.S. v Pransky,*
    318 F.3d 536 (3rd Cir. 2003) ....................................................................................... 3

*In re Cooper,*
    147 B.R. 678 (Bankr.D.N.J. 1992) ........................................................................ 16, 17

*In re GEC Industries, Inc.,*
    128 B.R. 892 (Bankr. D. Del. 1991) ........................................................................... 12

*In re Lernout & Hauspie Speech Products N.V.,*
    308 B.R. 672 (D.Del. 2004)........................................................................................... 3

*In re O'Brien Environmental Energy, Inc.,*
    188 F.3d 116 (3d Cir. 1999) .......................................................................................... 3

*In re Owens Corning,*
    419 F.3d 195 (3d Cir. 2005) ................................................................................... 16, 17

*Montrose Medical Group Participating Savings Plan v. Bulger,*
    243 F.3d 773 (3d.Cir. 2001) ................................................................................... 24, 25

**Statutes**
11 U.S.C. § 553.............................................................................................................. 12

28 U.S.C. § 158(a) ....................................................................................................... 1, 3

**I.    STATEMENT OF THE BASIS OF APPELLATE JURISDICTION**

This is an appeal from a *Memorandum of Opinion and Order* ("Opinion") and *Judgment* ("Judgment") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered on February 14, 2006 by which the Bankruptcy Court denied the *Motion Of Daniel Ferguson for Relief From the Automatic Stay Under §362(d)(1) of the Bankruptcy Code To The Extent Necessary To Set Off Mutual Debts* [Bankr. D.I. 1518] (the 'Motion" or "Motion for Set Off")  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

1

## II.    <u>STATEMENT OF THE ISSUES</u>

1.      Whether the Bankruptcy Court erred as a matter of law in not permitting the parties to put on evidence at the hearing on the Motion and requiring all proposed evidence to be attached to the parties' respective post-hearing briefs.

2.      Whether the Bankruptcy Court erred in holding that the substantive consolidation of the Debtors was not sufficient to create the requisite "mutuality" for a setoff.

3.      Whether the Bankruptcy Court erred as a matter of law in finding the "single business enterprise" doctrine inapplicable, such that no mutuality existed for setoff purposes.

4.      Whether the Bankruptcy Court erred as a matter of law in holding that the Debtor Garden Ridge, L.P. was not the 'alter ego' of Garden Ridge Management, Inc., or other debtors, such that no mutuality existed for setoff purposes.

5.      Whether the Bankruptcy Court erred as a matter of law in finding that Garden Ridge, L.P. was not the employer of Mr. Ferguson and the entity responsible for the payment of his severance benefits.

## III.    STANDARD OF REVIEW

The District Court may affirm, modify or reverse a Bankruptcy Court's judgment, order or decree or remand with instructions for further proceedings.  28 U.S.C. §158(a); Fed.R.Bankr.P. 8013.  In reviewing the decision of the Bankruptcy Court, the District Court reviews the Bankruptcy Court's legal determinations *de novo,* its factual findings for clear error, and its exercise of discretion for abuse thereof.  *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).  A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.  Id.  In determining whether an error exists, the Bankruptcy Court's application of the law to the facts is reviewed *de novo*.  Id. See also *In re Lernout & Hauspie Speech Products N.V.*, 308 B.R. 672, 675 (D.Del. 2004) (The Bankruptcy Court's finding of historical or narrative facts must be accepted unless clearly erroneous, but this Court may exercise plenary review of the Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to the historical facts).

The basic facts pertinent to Mr. Ferguson's Motion for Set Off, as presented to the Bankruptcy Court, are not in dispute.  Accordingly, this Court must review *de novo* whether the Bankruptcy Court properly denied the parties request for an evidentiary hearing and whether the Bankruptcy Court engaged in a proper legal analysis to make its determination that Mr. Ferguson was not entitled to set off.  This Court must review whether the Bankruptcy Court's factual conclusions reached from the documents attached to the parties' post-hearing briefs were clearly erroneous.  *I.R.S. v Pransky*, 318 F.3d 536, 542 (3rd Cir. 2003).

- 3 -

## IV.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On April 13, 2005, Mr. Ferguson filed with the United States Bankruptcy Court for the District of Delaware, ("Bankruptcy Court") the *Motion Of Daniel Ferguson For Relief From The Automatic Stay Under §362(d)(1) Of The Bankruptcy Code To The Extent Necessary To Set Off Mutual Debts* [Bankr. D.I. 1518] ("Motion").

On June 10, 2005, the Debtors filed their *Objection To Motion Of Daniel Ferguson For Relief From The Automatic Stay Under § 362(d)(1) Of The Bankruptcy Code T1o The Extent Necessary To Set Off Mutual Debts* [Bankr. D.I. 1735] ("Objection").

On June 22, 2005, Mr. Ferguson filed the *Reply Of Daniel Ferguson In Support Of His Motion For Relief From The Automatic Stay Under §362(d)(1) Of The Bankruptcy Code To The Extent Necessary To Set Off Mutual Debts* [Bankr. D.I. 1753] ("Reply").

The Bankruptcy Court held a hearing on the Motion on November 16, 2005 ("Hearing") At the hearing, the Bankruptcy Court informed the parties that it would not hold an evidentiary hearing, stating that the parties had not complied with the requirements for advance notification of the parties' intent to examine witnesses and introduce evidence. [Transcript, Ex. B, p. 53] In lieu of an evidentiary hearing, the Bankruptcy Court directed the preparation of simultaneous post-hearing briefs from both parties, instructing them to include appendices of relevant materials and evidence they wished to have considered.[1] [Ex. B, pp. 72-74]

On February 14, 2006, the Bankruptcy Court entered a *Judgment* ("Judgment") [Bankr. D.I. 2064] and a *Memorandum of Opinion and Order* ("Opinion") [Bankr. D.I. 2066] denying relief from stay.

---

[1] Between the filing of the Motion, Objection, Reply and the Hearing, the parties engaged in limited discovery, including a deposition on each side. This discovery resulted in the production of certain documents which were not referenced until the Post Hearing Briefs were filed.

On February 20, 2006, Mr. Ferguson filed his *Notice of Appeal* ("Notice of Appeal") in the Bankruptcy Court.

Following entry of the Judgment, Appellees initiated an adversary proceeding in the Bankruptcy Court against Mr. Ferguson, Adv. No. 06-50558 (KJC) ("Adversary"), seeking to recover the balance allegedly due under the promissory note which was the subject of the Motion for Set Off.  The adversary also seeks damages arising from the alleged failure to fulfill the terms of the Note, including interest, costs and attorney fees.   Appellant has moved to withraw the reference with respect to this adversary, which remains pending.

## V.    **SUMMARY OF ARGUMENT**

1.    The Bankruptcy Court abused its discretion in failing to hold an evidentiary hearing on the Motion on the specific basis that the parties had not requested such a hearing in advance.  Counsel followed all local and chambers procedures and informed the Bankruptcy Judge's staff that the Hearing was intended to be evidentiary in nature.  [See Agenda for Hearing Ex. A, item 8, pp. 7-8]  The failure to permit the parties to parties to present evidence at the Hearing, coupled with the requirement that the parties submit simultaneous post-hearing briefs, meant that evidence was submitted for the Court to review without the opportunity for the opposing party to comment or rebut.

2.    The Bankruptcy Court's refusal to permit the examination of witnesses and introduction of evidence was an abuse of discretion in that it unfairly prejudiced Mr. Ferguson's ability to present his case.  Mr. Ferguson bore the burden of proving his entitlement to a "set-off", the elements of which, including proof of mutuality of obligation, are fact intensive and case specific.   In addition, because discovery related to the Motion was concluded after the briefing on the Motion had been submitted, significant new evidence not addressed in the Motion, Objection or Reply, including documents reflecting that Garden Ridge, L.P. ("GRLP"), not Garden Ridge Management ("GRM") paid Mr. Ferguson and extended the loan to him, were addressed only in the Post-Trial Briefs and were not able to be used for cross-examination of the Debtors' witnesses.

3.    The Court also erred as a matter of law in finding that Garden Ridge, L.P. was not the employer of Mr. Ferguson and the entity responsible for the payment of his severance benefits.  In the Appendix to his Post Hearing Brief, Mr. Ferguson provided the Court with a copy of the Loan Agreement, a document drafted by GRLP explicitly stating that GRLP, the

Note creditor and entity making the Loan, was Mr. Ferguson's employer. Mr. Ferguson highlighted this undeniable admission of mutuality in his Post-Hearing Brief. With the exception of whether Mr. Ferguson was entitled to severance under the Agreement (an issue the parties consensually deferred), the *only* contested issue regarding Mr. Ferguson's request for set-off was mutuality. Despite providing the Bankruptcy Court with an undeniable admission of said mutuality, the Bankruptcy Court, without finding that the validity, provenance or plain meaning of the language in the Loan Agreement was in question, held that no mutuality existed.

4.      Even if Appellees had not admitted Mr. Ferguson was employed by the same debtor which made the Loan, the Bankruptcy Court erred in finding that the substantive consolidation of the Appellees for claims-administration purposes did not create the mutuality required for set off. The language of the Plan and Confirmation Order provides that claims against one debtor would be treated as claims against all the debtors and the assets and liability of the debtors pooled for claim administration purposes. The Bankruptcy Court ignored the plain language of the Plan and its own Confirmation Order when it declined to find that claims against one debtor could not be offset against the claims of another debtor against a creditor.

5.      Finally, the Bankruptcy Court erred in finding the "single business enterprise" and related corporations-law doctrines inapplicable and thereby concluding that the debtors should not be treated as a single entity for purposes of set off. The Bankruptcy Court specifically erred in finding that the Debtors did not invoke corporate separateness in order to achieve an inequitable result. The Debtors undeniably, (a) held themselves out as a single entity with a unitary management; and (b) explicitly stated that GRLP was acting as Mr. Ferguson's employer in making the Loan and soliciting the Note. Despite these facts, the Debtors subsequently denied

that GRLP had employed Mr. Ferguson solely in order to thwart set-off, and the Court

erroneously denied the set-off.

## VI.    **STATEMENT OF FACTS**

6.    The parties do not dispute the existence of the obligations at issue in the underlying Motion for Set Off. Appellant Daniel Ferguson ("Ferguson") is a former officer of the above-captioned pre-petition debtors and debtors in possession ("Debtors"). The parties agree that Mr. Ferguson was employed as the "Senior Vice President - Supply Chain" of the pre-petition Debtors, pursuant to a letter agreement (the "Agreement"). The Agreement promised certain severance and other benefits.

7.    Mr. Ferguson's employment was terminated on September 12, 2003. Mr. Ferguson has asserted a $310,000.00 claim against the Debtors. *See* Appendix to Ferguson's Post Hearing Brief, Exhibit 7, A019-A031 (hereinafter, "Ex. 7").[2] The claim seeks payment of relocation costs, including up to a 6% real estate commission on the sale of Mr. Ferguson's existing home in Michigan ($60,000), as well as a year of base salary ($250,000) due as a termination benefit under the Agreement.

8.    The parties agree that Mr. Ferguson received a loan relating to his relocation ("Loan"), secured by a note ("Note") payable to Debtor Garden Ridge, L.P. ("GRLP") which was renewed every year prior to his termination, and that neither the severance benefits promised under the letter agreement nor the obligations created by the Note have been paid. The Note, by its terms, was payable 30 days after the closing of the sale of his Michigan residence, or upon termination of his employment. When neither of those events occurred in the applicable year, the Note was renewed for the following year. Given that Mr. Ferguson's residence in Michigan remained unsold for several years, the Note was renewed annually prior to the petition date. *See* Final Note, Ex. 4.

---

[2] Reference to the evidentiary Exhibits submitted with Mr. Ferguson's Post Hearing Brief are by their numerical exhibit number and page reference. Additional documents submitted with this Brief are identified as Exhibits A through D.

9.      The parties disagree materially on the issue of whether Mr. Ferguson was employed by Garden Ridge Management, Inc. ("GRM"), or by multiple Debtors including GRLP. The Debtors contend that Mr. Ferguson was employed only by GRM but that he executed the Note in favor of GRLP, and therefore the *mutuality* requirement for set off of the parties' obligations has not been met. Mr. Ferguson contends that the issue of his employer's identity is mooted by the substantive consolidation provisions of the Debtors' plan (*See* Ex. 14) that merge all assets and liabilities of these Debtors. However, to the extent substantive consolidation does not control, Mr. Ferguson contends it is clear that GRLP was his employer at all material times.

10.     Contemporaneously with the execution of the Note, the Debtors and Mr. Ferguson executed a loan and bonus agreement ("Loan Agreement"). *See* Loan Agreement, Ex. 2 at A004-A005. The text of the Loan Agreement, which was produced by the Appellees and whose authenticity has not been disputed, states unambiguously that Mr. Ferguson was serving as an employee of GRLP at the time the Loan was made to him by GLRP and the Note issued to GRLP for repayment of the Loan.

11.     On February 2, 2004, GRLP and GRM filed Chapter 11 petitions in the Bankruptcy Court. On February 16, 2004, each of the Debtors filed its respective Schedules and Statement of Financial Affairs. On March 29, 2005, Appellees filed their *First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* [Bankr. D.I. 1467] ("Plan"). The Plan sought to substantively consolidate the Garden Ridge debtors, merging the assets and liabilities of those entities for Plan purposes, including the allowance and distribution of claims. Ex. 14 at A 377-378.

## VII.    ARGUMENT

The Bankruptcy Court committed reversible error by making findings of fact and law to the effect that no mutuality existed between the parties permitting set-off, and committed reversible error by failing to permit an evidentiary hearing on the Motion that unfairly and improperly prejudiced Mr. Ferguson's ability to present his case.  Mr. Ferguson presented uncontradicted evidence, in the form of the Loan Agreement, that GRLP had admitted it employed him at the time when the Loan was made, and in direct contemplation of that Loan. The Bankruptcy Court's conclusion that GRLP was *not* Mr. Ferguson's employer was in direct contradiction of the Loan Agreement, a contradiction that was not justified by any finding of fact or conclusion of law regarding the Loan Agreement.

The Bankruptcy Court further erred as a matter of law in finding that the substantive consolidation of the Debtors' cases did not create mutuality of obligation for set off purposes, and erred as a matter of fact and law in finding the "single business enterprise" doctrine inapplicable to the Appellees on grounds that their assertion of corporate separateness was not intended to work wrong upon Mr. Ferguson.  The factual evidence which would have been presented at an evidentiary hearing on the Motion for Set Off, and which was set forth in Ferguson's Post-Hearing Brief, indicate that GRLP paid Mr. Ferguson from its own account, as it did all of the Debtors' employees, and that GRLP was responsible for the severance benefits of the Debtors' terminated executives.  Accordingly, the Bankruptcy Court was clearly erroneous in finding that GRLP was not Mr. Ferguson's employer such that set off was not permissible.

A. **The Bankruptcy Court Erred as a Matter of Fact and of Law by Failing to Acknowledge GRLP's Conclusive Admission of Mutuality of Obligation Via The Loan Agreement**

The Bankruptcy Court committed reversible errors of fact and law when it found no mutuality of obligation between the parties, despite the existence of an uncontradicted, contemporaneous written admission by GRLP that it made the Loan and accepted the Note as Mr. Ferguson's employer. Lack of mutuality was the Opinion's *ratio decidendi* and, indeed, the sole contested legal issue before the Bankruptcy Court. [Opinion attached as Ex. C]

Setoff of mutual debts between two parties is permissible in bankruptcy pursuant to 11 U.S.C. § 553 and pursuant to applicable state law, allowing parties who owe mutual debts to offset one against another, paying only the balance. 11 U.S.C. § 553; *In re GEC Industries, Inc.*, 128 B.R. 892, 899-900 (Bankr. D. Del. 1991); *Bandy v. First State Bank*, 835 S.W.2d 609, 618 (Tex. 1992). In order to establish entitlement to set off under Section 553, four conditions must exist: "(1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable." *Pardo v. Pacificare of Texas, et al. [In re APF Co.]*, 264 B.R. 344, 354 (Walsh, C.J., Bankr.D.Del. 2001). The first and second conditions were undisputed in this case: the parties agree that the obligations of the Note and the Agreement both arose pre-petition. Nor was the fourth condition an issue for consideration at the Hearing, since Mr. Ferguson does not dispute the authenticity of the Note or that the Loan was made, and since the parties agreed to defer litigation concerning whether Mr. Ferguson was discharged "for cause" pending the Bankruptcy Court's ruling on the right to set off. The parties agree that ultimately, this determination is relevant to whether the Debtors may be liable under the severance benefit

provisions of the Agreement. However, the only issue before the Bankruptcy Court was the third condition, whether the claims and debts at issue were mutual.

The evidence before the Bankruptcy Court compels the conclusion that mutuality of obligation existed between the parties with respect to the Loan and Note on one hand, and the Agreement on the other. Excluding the deferred issue of the Debtors' liability under the Agreement, the Debtors' sole objection to setoff was based on the argument that all the Debtors' employees were formally employees of GRM, whereas the Loan was made by GRLP. See Objection. This distinction, Debtors contended, meant that Mr. Ferguson was requesting an impermissible three-party or "triangular" setoff; one which lacks the necessary mutuality of obligation. *Id.*

The Bankruptcy Court's determination that no mutuality of obligation existed was a clear error of fact because it is flatly contradicted by the language of the Loan Agreement, which provides, in pertinent part:

> Contemporaneously with the execution of this letter, you are executing the Note, and **Garden Ridge, L.P. (the "Company")** is making the loan to you evidenced by the Note. **You are currently serving as an employee of the Company**.

Loan Agreement, Ex. 2, A004 (emphasis added).

The Loan Agreement, therefore, is an admission by GRLP flatly contradicting the Debtors' post-petition theory that GRM was Mr. Ferguson's sole employer. Moreover, it was an admission which, as the above extract shows, was made contemporaneously with and in express contemplation of the Note. These facts were highlighted extensively in Mr. Ferguson's Post-Trial Brief. See Ferguson Post Hearing Brief, pp. 18-20. The Debtors' Post-Hearing Brief contains no explanation of the contradiction between the admission above and the Debtors'

position in the Objection and at the Hearing that the obligations in question lacked mutuality

because GRLP did not employ Mr. Ferguson.[3]

The Opinion contains no analysis of the import of the Loan Agreement, despite the fact

that if GRLP had made the Loan to Mr. Ferguson while he was an employee, then mutuality

inevitably exits between the obligations of the Agreement and those of the Note, given that

neither party disputes that the Agreement governs the obligations of the employer Debtor or

Debtors. The Bankruptcy Court simply ignored the plain language of the Loan Agreement that

made clear the parties' understanding that Mr. Ferguson was receiving a loan from GRLP as one

of that entity's employees.[4] The Bankruptcy Court's complete failure to acknowledge this

admission was a clear error of fact that compels reversal.

### B.     The Bankruptcy Court Erred in Holding that the Substantive Consolidation of the Debtors was not Sufficient to Create the Mutuality Required for Set Off

The Bankruptcy Court erred as a matter of law in failing to find that the substantive

consolidation of the Debtors' estates created mutuality as to all Debtors, including GRLP and

GRM (Opinion at 19, 20). In fact, the Bankruptcy Court's Order confirming the Debtors' first

amended plan of reorganization[5] conclusively established the requisite mutuality of the Note and

---

[3] By order of the Bankruptcy Court, the parties' Post-Hearing Briefs were submitted on the same day, and thus the parties had no opportunity to brief and respond to each others' arguments, despite the existence of new and critical information, including the Loan Agreement, uncovered in discovery only after the filing of the Motion, Objection and Reply.

[4] Notably, the language of the Loan Agreement is sufficient to validate setoff in this context even if the Bankruptcy Court concluded that the Loan Agreement was not a correct expression of the parties' relationship. As discussed in the Reply, Courts have upheld "triangular" setoffs based on the parties' express contemporaneous agreement to treat obligations as mutual. In this case, the Loan Agreement demonstrates, at the very least, the parties' express intent to treat GRLP as Mr. Ferguson's employer for all purposes relating to the Note. *See Equibank v. Lang Machinery [In re Lang Machinery Corp.]*, 1988 WL 110429, *5 (Fitzgerald, J., Bankr.W.D.Pa. October 19, 1988); *Depositors Trust Co. v. Frati Enters.*, 590 F.2d 377, 379 (1st Cir., 1979). This agreement as to mutuality cannot be undone after the fact.

[5] *Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code, Dated March 29, 2005* ("Confirmation Order") [D.I. 1598], Ex. 17.

severance obligations for purposes of permitting set-off on Mr. Ferguson's claim regardless of whether they were originally obligations of separate Debtors.[6]

The Confirmation Order, entered on April 28, 2005, provided for the substantive consolidation of all the Debtors into GRLP.   The substantive consolidation provisions of the Debtors' First Amended Plan of Reorganization clearly provide that *both* assets and liabilities of all debtors are merged into and are claims against Garden Ridge, L.P., the holder of the Note:

> On the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation, and distributions.  Subject to the occurrence of the Effective Date, ***(i) all assets and liabilities of Garden Holdings, Inc., Garden Ridge Corporation, Garden Ridge Investments, Inc., Garden Ridge Management, Inc., and Garden Ridge Finance Corporation shall be deemed or treated as though they were merged into and with the assets of Garden Ridge, L.P.***

Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code ("Plan"), p. 25. [Emphasis added.]  [D.I. 1467]  Ex. 14 at A377.

The language of the Plan and Confirmation Order controls on the issue of mutuality and cannot be disregarded by the Bankruptcy Court.  The Plan plainly makes each claim an "obligation of the Consolidated Debtors".  *Id.*  The obligations created by the Plan are binding upon the Debtors pursuant to the Confirmation Order: the Confirmation Order provides that "the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtors, ... (iii) all holders of Claims against and Interest in the Debtors".  Ex. 17 at 15-16, ¶ 30 A404-A405.

As set forth in Mr. Ferguson's arguments to the Bankruptcy Court, the findings made in the Confirmation Order as to the substantive consolidation of these Debtors are law of the case, and not subject to revision by the Bankruptcy Court.  Under the law of the case doctrine, when a

---

[6] The Confirmation Order was entered by Judge Sullivan while the Opinion with respect to the Motion for Set Off was entered by Judge Baxter.

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *In re Ameriserve Food Distr., Inc.*, 315 B.R. 24, 26 (Bankr.D.Del. 2004). The Bankruptcy Court's determination at confirmation that the assets and liabilities of the Debtors were to be merged for Plan and claim-related purposes should have ended the inquiry on mutuality, in the absence of new evidence or a change in supervening law. *Id.*

The Bankruptcy Court relied in its Opinion on the Debtors' argument based on the *Murray Industries, Inc.* decision from the Middle District of Florida, which purports to stand for the proposition that substantive consolidation does not affect rights and defenses existing prior to substantive consolidation. Opinion, p.20. This reliance is misplaced. Although, as the Court noted, *Murray Industries* was not cited or discussed in the Objection (but only in the Debtors' post-trial brief), the *Murray* decision dealt with the issue of whether the State of Florida, which waived sovereign immunity under Section 106 when it filed claims against one debtor, also waived immunity against another debtor when the two debtors' cases were substantively consolidated. 125 B.R. at 316.

Without regard to the applicability of the *Murray* decision to the case at bar, the premise that the Debtors' consolidation cannot modify a defense based on separateness must be rejected because it is settled law in this circuit that substantive consolidation can (and generally does) modify pre-consolidation substantive rights. *In re Owens Corning,* 419 F.3d 195 (3d Cir. 2005)*; In re Cooper*, 147 B.R. 678, 682 (Bankr.D.N.J. 1992) ("Joint administration" aims to ease administrative burden without affecting substantive rights, but "substantive consolidation" aims to ensure equitable treatment of all creditors). In fact, the Bankruptcy Court's suggestion that pre-consolidation substantive rights cannot be altered is completely at odds with this circuit's

articulation of the basic guidelines for substantive consolidation, which clearly permit modification of substantive rights where the equities so justify.  Thus, the Third Circuit's recent comprehensive review of the law of substantive consolidation in *In re Owens Corning* takes as a given that consolidation "may affect profoundly creditors' rights and recoveries"  419 F.3d at 211-212, which is why *Owens Corning* confirms that substantive consolidation is an extraordinary remedy. 419 F.3d at 199-200.

The New Jersey Bankruptcy Court's decision in *In re Cooper*, 147 B.R. 678 (Bankr.D.N.J. 1992) demonstrates the incorrectness or inapplicability of *Murray* and similar cases to these circumstances.  The Court in *Cooper* held that an IRS tax lien against one entity pre-dating the substantive consolidation order was extended, by virtue of that consolidation, to a lien against *all the debtors*.  *Id*.  In short, and without belaboring the issue, the *Cooper* Court did exactly what the Bankruptcy Court stated *Murray* holds to be impermissible - removing the pre-consolidation substantive defenses of the Debtors based on corporate separateness and treating them as one entity.  *Id.*

The *Owens Corning* and *Cooper* decisions make it clear that substantive consolidation changes the entities against whom claims are asserted into a single entity, and impacts the recovery of creditors in the process.  Accordingly, the Bankruptcy Court erred when it failed to recognize that Mr. Ferguson's claim for severance benefits, regardless of which entity it was asserted against, became a claim against GRLP by operation of the Plan and the automatically created the mutuality required for set off.

### C. The Court Erred in Finding a Lack of Mutuality" Because The Debtors Acted as One Entity for Purposes Including the Employment of Mr. Ferguson

Even if the Bankruptcy Court ignored the impact of the Debtors' substantive consolidation, the Court erred in holding that GRM and GRLP were not operated as a single

- 17 -

entity under the "single business enterprise doctrine" (Opinion at 17-18) and did not disregard the corporate form, for purposes of setoff. (Opinion at 16-17)  The documentary evidence submitted to the Bankruptcy Court demonstrated that setoff in this case does not fail for lack of mutuality because the Debtors collectively, and not GRM exclusively, were Mr. Ferguson's employer.  Almost without exception, the Debtors' own pleadings prior to the filing of the Motion and the documents produced to Mr. Ferguson during pre-trial discovery demonstrate that the Debtors operated and employed employees on a consolidated basis.  Furthermore, if any single entity is deemed to be his employer, it would have to be GRLP, not GRM as GRLP was the only entity which individually signed a document stating it was his employer, and GRLP was the entity which paid him.

The Debtors, while conceding that Mr. Ferguson was a member of the collective Debtors' executive committee and the individual in charge of managing the Debtors' supply chain (a function belonging to GRLP as the only operational entity), argued that he was simultaneously an employee only of GRM.  The Court erroneously accepted this argument.  The only documentary evidence produced by the Debtors to establish any connection between Mr. Ferguson's employment and the GRM Debtor is a copy of his W-2 form and a copy of one of his paychecks.  The Bankruptcy Court ignored, however, the substantial documentary evidence to the contrary, all of which demonstrates that Mr. Ferguson was an employee of all the Debtors, and in particular, paid via an account not only funded, but controlled by, GRLP, the same entity he is obligated to under the Note.

The evidence ignored by the Bankruptcy Court included the following:

### i.    Mr. Ferguson's Employment Documents

Mr. Ferguson's employment Agreement nowhere indicates that he will be an employee of GRM, but universally uses the term "Garden Ridge" to describe the employer. See Ex. 1.

- 18 -

Indeed, the name "Garden Ridge Management, Inc." is *entirely absent* from the Agreement. *Id.* Nor is there any indication that Mr. Ferguson's duties are to be confined to GRM's business. *Id.* Likewise, there is no discussion of the terms on which Mr. Ferguson's labor is to be divided between GRM and its "clients". *Id.* Garden Ridge Management, Inc. does not appear separately in any other document relating to his employment, including the proposed Termination Agreement that the Debtors submitted to Mr. Ferguson (but which he did not sign) [Ex. 5, A012-A017] or the COBRA notice he received after he left the Debtors' employment [Ex. 6, A018]. Given the Debtors' acknowledged joint management, the only reasonable inference from the use of the name "Garden Ridge" in these documents is that it applied to all of the Garden Ridge entities.

### ii.     Debtors' Filings on its Financial Structure

The Debtors' pleadings filed in the bankruptcy case contained numerous admissions of record that the Debtors had *no* system for accounting for intercompany debts. *See e.g. Disclosure Statement*[7], Ex. 15 at 29-30, § IX-D, A384-A385; *See also Memorandum in Support of Confirmation,* Ex. 16 at 40-41, ¶ 96, A388-A389. With no such accounting, any "services" provided by GRM to GRLP were, thus, unremunerated. The reality of the Debtors operations is described in the sections of the *Memorandum in Support of Confirmation* dealing with the Debtors' request for substantive consolidation, wherein the Debtors strenuously argue that they should be treated as one single entity because, *inter alia*, their operations are conducted almost entirely by Garden Ridge L.P., they share common management, and they maintain no system of accounting for or reconciling intercompany debts. Memorandum, Ex. 16 at 40-41, ¶ 96, A388-A389.

---

[7] *First Amended and Corrected Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* [D.I. 1458].

### iii.   The Debtors Statements and Schedules Confirm that Executive Severance Pay Obligations were the Responsibility of Garden Ridge, L.P.

The Debtors' Statements and Schedules for Garden Ridge L.P. and GRM, filed on February 16, 2005, confirm that the payroll account and the account receivable based on the Note are both property of Garden Ridge, L.P. [Exs. 10, 12].  Garden Ridge L.P.'s Schedule B-2 lists the aforementioned Payroll Account as one of that Debtor's checking, savings or other financial accounts [Ex. 10, A127].  Schedule B-15 shows the Note receivable of $250,000 from "Dan Ferguson". [Ex.10, A131].[8]  Notably, Garden Ridge, L.P.'s *Statement of Financial Affairs*, also filed on February 16, 2005, shows that Garden Ridge, L.P. was the Debtor responsible for severance pay disbursements to senior executives.  [Ex. 11]  Statement 23 requires a debtor corporation to list all withdrawals or distributions to insiders, including compensation in any form during one year immediately preceding the commencement of the case.  Exhibit 23-1 responding to Statement 23 shows severance payments made to a number of the Debtors' former senior executives [Ex. 11, A294].[9]  Separately, Exhibit 3-2 discloses payments of $14,729.99 made to Mr. Ferguson in 2003, eliminating any question that all payments to Mr. Ferguson did not go through GRM [Ex. 11, A282].

### iv.   The Debtors' Payroll Account.

The mechanism for payment of payroll was described in detail in the Debtors' Cash Management Motion[10], [Ex 18, A427-A429], the accuracy of which was vouched for by John

---

[8] Schedule F-2 also lists the claims of certain of the Debtors' former executives, including Mr. Ferguson, who are parties to a pending Texas state court action against the Debtors in which they sought to recover, *inter alia*, unpaid compensation and benefits.

[9] Mr. Ferguson is not listed on Exhibit 23-1 because he did not receive any portion of the severance payments to which he was entitled under the Agreement.  These amounts are part of his proof of claim of record in these jointly-administered cases.

[10] Motion for an Order (A) Authorizing Debtors to Continue Using Existing Centralized Cash Management System, Bank Accounts and Business Forms, (B) Granting an Interim Waiver of the Deposit Guidelines Set Forth in Section 345 of the Bankruptcy Code and (C) Granting Related Relief [D.I. 11] ("Cash Management Motion").

Martin. *See Declaration of John Martin in Support of First Day Motions* [Ex. 20, A484]. The Cash Management Motion states that the Debtors' payroll service provider, ADP, would inform Garden Ridge L.P. prior to payday of the total amount necessary to fund the payroll. Cash Management Motion, Ex. 18 at 8, ¶ 29, A428. The funds necessary to cover such requirements, including the payroll, would be transferred into a general operating account, controlled by Garden Ridge L.P. Ex. 18 at 8, ¶ 28, A428. From there, the Debtors would disburse payroll funds to a payroll account, *also* controlled by Garden Ridge L.P. *See* Cash Management Motion at Exhibit A - Bank Accounts, A439 (Showing payroll account no. 00480071323 as owned by Garden Ridge, L.P.). The Debtors used the payroll account to fund disbursements directly into the accounts of employees who did not receive paper checks, including Mr. Ferguson. Cash Management Motion at 8-9, ¶ 29, A428-A429.

This mechanism was confirmed by Holly Shafer, testifying at deposition on behalf of the Debtors. *See* Shafer Depo. Transcript, Ex.21, pp. 26-28, A496. However, Ms. Shafer attempted to state in deposition that the Cash Management Motion had an error where it identified the Payroll account as belonging to Garden Ridge, L.P. [Ex. 21, p. 27, A496]. She asserted that her understanding was that the Payroll Account was owned by GRM.[11] While this contention is belied by the Debtors own filings, as will be demonstrated below, it is clear that Mr. Ferguson was either paid by Garden Ridge, L.P. on its own behalf, funded to a payroll account without regard to intercompany obligations, or paid from a facility funded by Garden Ridge L.P.'s financing facilities (guaranteed by GRM and the other Debtors) and effectively a collective obligation of all the Debtors.

---

[11] Debtors' responses to written interrogatories that were provided to Mr. Ferguson also contend Exhibit A to the Cash Management Order incorrectly identifies the payroll account as owned by Garden Ridge, L.P., when it was in fact owned by GRM. Ex. 8 at 16, A047.

However, a review of the Debtors' monthly operating reports and their statements and schedules demonstrates that the Debtors' contention regarding the Payroll Account is wrong. The bank statements issued by Bank of America for the accounts in question clearly show that the payroll account was, as stated in the Cash Management Motion, owned by Garden Ridge, L.P. and not by GRM.  Therefore, not only is clear and ample evidence that GRLP was both the 'payor-in-fact' of the payroll and the nominal owner of the Payroll Account, there is also conclusive evidence in the statements and schedules that there is no lack of mutuality between severance obligations owed by the Debtors and any obligation under the Note.

The Debtors' *Monthly Operating Report* for the period February 2004 ("MOR") contains actual bank statements from Bank of America for that month, the first month after the filing of these Debtors' petitions.  The MOR also allows a reader to track the disbursement of funds into the Garden Ridge, L.P. "Operating Account" and the subsequent transfer of payroll monies by that Debtor into a "Payroll Account" for direct disbursement to individual employees.  The MOR form for Garden Ridge, L.P., dated March 12, 2004 and signed by Donald Martin as CFO, states that copies of bank statements are attached for that GRLP [Ex. 9, A056]  whereas the MOR form for GRM clearly states that *no* bank statements are attached because "NO ACTIVITY" took place with respect to bank accounts. [Ex.9, A059.]

A review of the Bank of America statement for the "Operating Account" of Garden Ridge, L.P. (#0047 9782 7903) attached to the MOR, shows a debit of $1,100,000.00 on February 5, 2005, on page 9 of that statement, which is described as "Funds Transfer - Db / Payroll Funding". [Ex.9, A076].   A similar review of the Bank of America statement for the account labeled "Payroll Account" (#0004 8007 1323) attached to the MOR, shows the corresponding credit from the above transfer on February 5, 2005 on page 1 of that statement, in

the amount of $1,100,000 as "Funds Transfer - Cr / Payroll Funding" [Ex. 9, A113]. Clearly printed on the address block of the very same page are the words "Garden Ridge, L.P. / Payroll Account / DIP Case# 04-10324 (LHK)" [Ex. 9, A113]. The MOR, therefore, makes clear that the Payroll Account was, in fact, controlled by Garden Ridge, L.P.

While the foregoing analysis is a difficult undertaking, Mr. Ferguson was not able to present this evidence to the Bankruptcy Court in any other way. As a result, it was presented in the written format set forth above, at pages 14-17 of Mr. Ferguson's Post Hearing Brief. Mr. Ferguson expected to cross-examine Ms. Shafer with these documents at the Hearing, so that the Court would get the benefit of the orderly presentation of the documents through a knowledgeable witness. Ms. Shafer was present at the Hearing. However, the Bankruptcy Court's denial of an evidentiary hearing precluded this presentation. The denial of the opportunity to present this evidence to the Court at the hearing mandates reversal on both procedural and substantive grounds.

### D.    The Bankruptcy Court Erred in Failing to Apply Judicial Estoppel

Mr. Ferguson's argument that the Debtors are judicially estopped from denying that they acted as a single entity by virtue of their contrary statements during the pendency of the case was completely ignored by the Bankruptcy Court. However, the record below demonstrated that the requirements for judicial estoppel were met. Accordingly, the common-law principal of judicial estoppel presents the Debtors from asserting that Mr. Ferguson and other employees of these Debtors were employees only of GRM and not of GRLP (the Debtor entity that conducted substantially all of these Debtors' pre-petition business operations) or of the enterprise as a whole.

Judicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a

prior litigation. It most clearly applies where a party attempts to contradict its own sworn statements made in prior litigation. *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex.App.-El Paso, 1997). The Third Circuit Court of Appeals has set forth three elements required to apply judicial estoppel. *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-780 (3d.Cir. 2001). First, the party to be estopped must have taken two positions that are irreconcilably inconsistent; second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith--i.e., with intent to play fast and loose with the court"; and finally, Courts may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. *Id.*

The Debtors' position that GRM alone employed Mr. Ferguson (and, therefore, presumably all other employees, officers and directors who received their paychecks with GRM's name on top) is irreconcilably inconsistent with the Debtors' prior position that they operated as a single entity and with the evidence cited above that GRLP not only funded but controlled the Debtors' payroll. For example, in the Memorandum in Support of Confirmation submitted by the Debtors [Ex. 16][12], the Debtors argued to the Bankruptcy Court that substantive consolidation is necessary because of the close-knit operations of the Debtors, including, *inter alia,* the fact that (i)the Debtors issued only consolidated financial statements and tax returns, (ii) the Debtors maintain a consolidated cash-management system, consolidated risk management, insurance, payroll and benefits system, (iii) that the Debtors have overlapping officers and directors; (iv) *that overhead for the "consolidated entity" is booked and paid by GRLP without allocation to each entity*, and (v) that the Debtors' facility with Bank of America was a joint and several

---

[12] *Memorandum in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* [D.I. 1579].

obligation of all the Debtors. *See* Memorandum, Ex. 16 at 40-41, ¶ 96, A388-A389. Moreover, in the "Confirmation Order",[13] the Bankruptcy Court found explicitly that "**[b]ased on the Martin Declaration**, the Court finds that there is a **substantial identity and inseparable relationship between the Debtors** and that the benefits of consolidation outweigh any harm or prejudice to creditors." Confirmation Order, Ex. 17 at 14, ¶ 23, A403 [emphasis added]. Paragraph 83 of the Martin Declaration in support of the plan [Ex. 19] recites that substantive consolidation is justified by a set of factors identical to those cited in the Memorandum, above [Ex. 19 at 30-32, A474-A476].

In contrast, the position the Debtors took before the Bankruptcy Court in response to Mr. Ferguson's Set Off Motion was to claim that the Debtors were not substantially identical, but were so separate that no mutuality of obligation can exist between them. The Debtors' change of position on the issue of the operation of their business rises to the level of bad faith meriting judicial estoppel. As outlined by the Third Circuit Court in *Bulger*, an inconsistency is in bad faith where the party in question behaves in a "culpable" manner, using the inconsistency intentionally to obtain unfair advantage, and where that culpable behavior involves representations to the Court. 243 F.3d at 781. In this case, the Debtors argued an inconsistency for the sole purpose of trying to save money.

Based on the statements in the aforementioned Memorandum and the Martin Declaration that the Debtors constituted a single entity with shared management, the Debtors obtained the extraordinary relief of substantive consolidation. Confirmation Order, Ex. 17 at 14, ¶ 23, A403. For purposes of the Objection and the Hearing on the Motion for Set Off, however, the concept of a unitary entity of all the Debtors was discarded because it would permit Mr. Ferguson to

---

[13] *Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code, Dated March 29, 2005* [D.I. 1598].

offset the entire amount of a general unsecured claim (worth mere pennies-on-the-dollar) against a 'hundred-cent-dollar' account receivable. In an effort to advance this inconsistency, they filed an interrogatory response to Mr. Ferguson's discovery stating that their first-day motion to permit the continued use of their existing bank accounts was erroneous where it indicated that their payroll account was in the name of Garden Ridge, L.P. [Ex. 8, A046]. In fact, as discussed above, their own Monthly Operating Report, which attached the Debtors' actual bank statements from Bank of America, confirms the payroll account was a Garden Ridge, L.P. account [*See* Ex. 9].

Under the circumstances, judicial estoppel was an appropriate remedy to prevent the Debtors profiting from their attempt to take deliberately inconsistent positions before the Bankruptcy Court. The Bankruptcy Court, however, ignored this estoppel argument entirely. The cumulative evidence of (a) the Debtors' own documentation submitted in the Monthly Operating Reports, (b) their own strenuous insistence before the Bankruptcy Court that they were a "consolidated entity", (c) the plain statements in the Martin Declaration, and (d) the evidence that GRLP in fact controlled both the source and disbursement of Mr. Ferguson's salary, warranted the application of judicial estoppel to the Debtors' Opposition to Set Off Motion.

## V.    **CONCLUSION**

For the reasons given above, Mr. Ferguson respectfully submits the Bankruptcy Court erred as a matter of law in finding no mutuality of obligation with respect to the obligations set forth in the Motion for Set Off.  Accordingly, the Opinion and Judgment entered by the Bankruptcy Court should be reversed.

Dated: June 30, 2005
Wilmington, Delaware

**BUCHANAN INGERSOLL PC**

/s/    _William D. Sullivan_
William D. Sullivan (#2820)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
Tel:  (302) 428-5500
Fax:  (302) 428-3996

Counsel for Movant
Daniel Ferguson

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE GARDEN RIDGE CORPORATION, *et al.*, )

                                          )       Chapter 11

          Debtors.              )       Case No. 04-10324 (RB)

                                            )       Jointly Administered

_____)

## CERTIFICATE OF SERVICE

      I, William D. Sullivan, Esquire, do hereby certify that a true and correct copy of

*Appellant's Opening Brief on Appeal*  was served upon the following via hand-delivery:

Joseph Michael Barry, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Dated:  June 30, 2006                   */s/ William D. Sullivan*_____
                                        William D. Sullivan

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE GARDEN RIDGE CORPORATION, *et al.*,   )
                                           )   Chapter 11
              Debtors.                     )   Case No. 04-10324 (RB)
                                           )   Jointly Administered
_____)

**DANIEL FERGUSON,**

**Movant,**

v.

**GARDEN RIDGE CORPORATION,** *et al.*

**Debtors.**

_____

**APPENDIX TO APPELLANT DANIEL FERGUSON'S**
**OPENING BRIEF ON APPEAL**

_____

**BUCHANAN INGERSOLL PC**
William D. Sullivan, Esquire (#2820)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
Tel:  (302) 428-5500
Fax:  (302) 428-3996

Dated:  June 30, 2006

Counsel for Movant
Daniel Ferguson

# TABLE OF CONTENTS FOR APPENDIX

**Exhibit    Item**

A.      Notice of Agenda of Matters Scheduled for Hearing on November 16, 2005 at 9:30 a.m., Filed 11/4/05

B.      Transcript of Hearing on November 16, 2005 at 9:30 a.m.

C.      Memorandum of Opinion and Order (Signed: 2/10/06; Entered: 2/14/06)

D.      Judgment (Signed: 2/10/06; Entered: 2/14/06) [D.I. 2066]

# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, *et al.*, | ) | Case No. 04-10324 (RB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON NOVEMBER 16, 2005 AT 9:30 A.M.

## CONTINUED, RESOLVED OR WITHDRAWN MATTERS

1.  Pre-Trial Conference, *Garden Ridge Corp., et al. v. Employers Insurance of Wausau, et al.*, Adversary Proceeding Number 05-51893

    Deadline to Answer Complaint:          August 15, 2005 (Extended by Order to November 30, 2005)

    Related Pleadings:

    a)   Complaint for Judgment (I) Awarding Damages, (II) Estimating Claim, and (III) Partially Disallowing Claim (Filed July 8, 2005) [Docket No. 1]

    Status: This matter has been resolved in principle and the parties are finalizing the terms of a stipulation.

2.  Pre-Trial Conference, *Sentry Insurance A Mutual Company v. Garden Ridge, L.P., et al.*, Adversary Proceeding Number 05-52548

    Deadline to Answer Complaint:          October 20, 2005

    Related Pleadings:

    a)   Complaint for Declaratory Relief (Filed September 13, 2005) [Docket No. 1]

    b)   [Reorganized Debtors] Answer with Verified Counterclaims and Crossclaims (Filed September 28, 2005) [Docket No. 8]

    c)   Garden Ridge, L.P.'s Motion for Preliminary Injunction Enjoining the Pending State Court Declaratory Action Pursuant to 11 U.S.C. Sec. 105 (Filed September 28, 2005) [Docket No. 9]

DB01:1894075.1

062883.1001

11/4/05

1968.

d)  Opening Brief in Support of Garden Ridge Motion for Preliminary Injunction Enjoining the Pending State Court Declaratory Action Pursuant to 11 U.S.C. Sec. 105 (September 28, 2005) [Docket No. 11]

e)  Sharon Grizzaffi and Michael Grizzaffi's Brief in Opposition to Garden Ridge's Motion for Preliminary Injunction Enjoining the Pending State Court Declaratory Action Pursuant to 11 U.S.C. Sec. 105 (October 11, 2005) [Docket No. 15]

f)  [Sentry Insurance] Original Answer to Reorganized Debtor's Verified Counterclaims (Filed October 17, 2005) [Docket No. 20]

g)  Sharon Grizzaffi and Michael Grizzaffi's Original Answer to Sentry Insurance's Original Complaint for Declaratory Relief (Filed October 20, 2005) [Docket No. 21]

h)  Sharon Grizzaffi and Michael Grizzaffi's Original Answer to Garden Ridge, L.P.'s Crossclaims (Filed October 20, 2005) [Docket No. 22]

Status: Counsel to the Reorganized Debtors has conferred with counsel to Sentry Insurance and Mr. & Mrs. Grizzaffi and the parties jointly respectfully request that the pretrial conference in this matter be rescheduled pending the Court's adjudication of the pending motion for issuance of a preliminary injunction. The parties will be available to the extent the Court has any questions.

## UNCONTESTED MATTERS – GOING FORWARD

3.  Motion for an Order Delaying Entry of a Final Decree and Extending the Date for Filing a Final Report and Accounting (Filed September 26, 2005) [Docket No. 1921]

Objection/Response Deadline:          November 7, 2005 at 4:00 p.m.

Objections/Responses Received:          None to date.

Status: If no objections are filed by November 7, 2005, the Reorganized Debtors will file a certification of no objection and the Court may enter the order without further notice or hearing. If an objection is filed however, this matter will go forward.

4.  Huntley, Mullaney & Spargo, LLC's Fifth and Final Final Fee Application (Filed June 10, 2005) [Docket No. 1726]

Objection Response Deadline:   July 11, 2005 at 4:00 p.m. (Extended to July 18, 2005 at 4:00 p.m. for certain parties)

Objections/Responses Received:

a)   United States Trustee's Objection to the Fifth and Final Verified Fee Application of Huntley, Mullaney & Spargo, LLC, for Interim and Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period December 1, 2004 through June 2, 2005 (Filed July 11, 2005) [Docket No. 1770]

b)   GRDG Holdings LLC's Joiner and Objection to Fifth and Final Verified Fee Application of Huntley, Mullaney & Spargo, LLC, (Filed July 18, 2005) [Docket No. 1772]

c)   Reorganized Debtors' Objection to the Fifth and Final Verified Fee Application of Huntley, Mullaney & Spargo, LLC, for Interim and Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period December 1, 2004 through June 2, 2005 and the Period April 2, 2004 through June 2, 2005 (Filed July 18, 2005) [Docket No. 1773]

Related Pleadings:

d)   Omnibus Response of Huntley, Mullaney & Spargo, LLC to Objections to Fifth and Final Fee Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period December 1, 2004 through May 11, 2005 and the Period April 2, 2004 through May 11, 2005 (Filed September 26, 2005) [Docket No. 1920]

e)   Certification of Counsel Regarding Order Approving Fifth and Final Verified Fee Application of Huntley, Mullaney & Spargo, LLC for Interim and Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period December 1, 2004 through June 2, 2005 and the Period of April 2, 2004 through June 2, 2005 (Filed October 26, 2005) [Docket No. 1957]

f)   Notice of Hearing on Final Fee Application (Filed November 1, 2005) [Docket No. 1963]

Status: With respect to items (a) through (c), this matter has been resolved. At the request of the Court, this matter is going forward.

## CONTESTED MATTERS – GOING FORWARD

5. Debtors' Third Omnibus Objection (Substantive) to Administrative Claims Pursuant to Sections 105 and 502(b) of the Bankruptcy Code And Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (Filed September 7, 2005) [Docket No. 1855]

Objection/Response Deadline:    September 29, 2005 at 4:00 p.m. (Extended to November 2, 2005 at 4:00 p.m. for Humble Gardens, LLC)

Remaining Unresolved Objections/Responses Received:

a) Response of Texas Ad Valorem Taxing Authorities to Debtors' Third Omnibus Objection (Substantive) to Administrative Claims Pursuant to Sections 105 and 502(b) of the Bankruptcy Code And Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (Filed September 29, 2005) [Docket No. 1927]

b) Humble Garden's Response in Opposition to Debtors' Third Omnibus Objection (Substantive) to Administrative Claims (Filed November 2, 2005) [Docket No. 1967]

Related Pleadings:

c) Notice of Submission of Copies of Proofs of Claim Regarding Reorganized Debtors' Third Omnibus Objection to Claims: Docket No. 1855 (Filed September 21, 2005) [Docket No. 1911]

d) Order Granting Debtors' Third Omnibus Objection to Claims (Signed October 12, 2005) [Docket No. 1945]

e) Certification of Counsel Regarding Docket No. 1945 (Filed October 31, 2005) [Docket No. 1958]

Status: With respect to the Claim of Harris County/City of Houston (item (a)), this matter has been resolved and a stipulated form of order will be submitted. With respect to item (b), the parties are working toward a consensual resolution; however, to the extent one cannot be reached prior to the hearing, this matter will go forward.

6. Verified Fourth Omnibus (Non-Substantive) Objection of the Post-Effective Date Committee to Claims Pursuant to 11 U.S.C. § 502(B), Fed. R. Bankr. P. 3003 and 3007 and Local Rule 3007-1 (Filed October 20, 2005) [Docket No. 1953]

Objection/Response Deadline:    November 2, 2005 at 4:00 p.m.

Objections/Responses Received:

a)   Response of The Lancaster Colony Corporation to the Post-Effective Date Committee's Fourth Omnibus (Non-Substantive) Objection to Claims (Filed November 1, 2005) [Docket No. 1964]

Status: This matter is going forward.

7.   Reorganized Debtors' Motion for Summary Judgment with Respect to the Motions of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) and to Schedule a Hearing on the Motion for the Next Omnibus Hearing Date (Filed September 19, 2005) [Docket No. 1908]

| | |
|---|---|
| Response Deadline<br>(Pursuant to Court Order): | October 17, 2005 at 4:00 p.m. |
| Reply Deadline:<br>(Pursuant to Court Order): | October 31, 2005 at 4:00 p.m. |
| Sur-Reply Deadline:<br>(Pursuant to Court Order): | November 7, 2005 at 11:00 a.m. |

Related Pleadings to Summary Judgment Motion:

a)   Opening Brief in Support of Reorganized Debtors' Motion for Summary Judgment with Respect to the Motions of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(B) and to Schedule a Hearing on the Motion for the Next Omnibus Hearing Date (Filed September 19, 2005) [Docket No. 1907]

b)   The Informal Landlord Committee's Response to Reorganized Debtors' Motion for Summary Judgment with Respect to the Motions of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(B) (With Cross-Motion for Partial Summary Judgment Attached) (Filed October 17, 2005) [Docket No. 1948]

c)   Notice of Filing of Exhibit E to Answering Brief by Informal Landlord Committee (Re: D.I. #1948) (Filed October 18, 2005) [Docket No. 1952]

d)   United States Trustee's Response in Opposition to the Answering Brief in Support of (I) The Informal Landlord Committee's Response to Reorganized Debtors' Motion for Summary Judgment

with Respect to the Motions of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(B) and (II) The Informal Landlord Committee's Cross-Motion for Summary Judgment (Docket No. 1948) (Filed October 31, 2005) [Docket No. 1961]

e)    Reorganized Debtors' (I) Reply to the Response of the Informal Landlord Committee to the Reorganized Debtors' Motion for Summary Judgment, and (II) Response to the Informal Landlord Committee's Cross-Motion (Filed October 31, 2005) [Docket No. 1962]

Related Pleadings:

f)    Informal Landlord Committee's (a) Motion for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) (Regarding Thompson & Knight) (Filed April 14, 2005) [Docket No. 1514] and (b) Motion for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) (Regarding Chiron Financial) (Filed April 14, 2005) [Docket No. 1516]

Objections/Responses and Related Pleadings Received:

1)    United States Trustee's Objection to the Motion of Informal Landlord Committee for Administrative Allowance of Reasonable Fees and Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) (Docket No. 1514) (Filed August 8, 2005) [Docket No. 1792]

2)    United States Trustee's Objection to the Motion of Informal Landlord Committee for Administrative Allowance of Reasonable Fees and Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) (Filed August 8, 2005) [Docket No. 1793]

3)    Reorganized Debtors' Objection to the Motions of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) (Filed August 8, 2005) [Docket No. 1794]

4)    GRDG Holdings LLC's Objection to Motions of Informal Landlord Committee for Substantial Contribution Awards (Filed August 8, 2005) [Docket No. 1795]

5)    Objection of the Official Committee of Unsecured Creditors to the Informal Landlord Committee's Motions for Allowance of Fees and Expenses for Professional Services Rendered Pursuant to 11 U.S.C. Section 503(b) (Docket Nos. 1514 and 1516) (Filed August 8, 2005) [Docket No. 1796]

6)    Objection of Allied Capital Corporation to the Motions of the Informal Landlord Committee for Administrative Allowance of Reasonable Fees and Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b) (Filed August 8, 2005) [Docket No. 1797]

7)    Order Approving Stipulation Resolving the Motion of the Informal Landlord Committee For Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered With Respect to Services Provided and Costs Incurred by Robinson Grayson & Dryden, P.A. (Signed September 21, 2005) [Docket No. 1910]

8)    Order Approving Stipulation Regarding Proceedings on Motions of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered (October 11, 2005) [Docket No. 1942]

Status: This matter will be going forward with respect to items (a) through (e).

8.    Motion of Daniel Ferguson for Relief from the Automatic Stay Under § 362(d)(1) of the Bankruptcy Code to the Extent Necessary to Set Off Mutual Debts (Filed April 14, 2005) [Docket No. 1518]

Objection/Response Deadline:            April 21, 2005 at 4:00 p.m.
                                        (Extended for the Debtors)

Objections/Responses Received:

a)    Reorganized Debtors' Objection to Motion of Daniel Ferguson for Relief from the Automatic Stay Under § 362(d)(1) of the Bankruptcy Code to the Extent Necessary to Set Off Mutual Debts (Filed June 10, 2005) [Docket No. 1725]

b)    Reply of Daniel Ferguson in Support of His Motion for Relief from the Automatic Stay Under § 362(d)(1) of the Bankruptcy Code to the Extent Necessary to Set Off Mutual Debts (Filed June 22, 2005) [Docket No. 1753]

Status: This matter will go forward with an evidentiary hearing and oral argument. The parties have agreed that the only issue going forward at this hearing is whether Mr. Ferguson's claim qualifies for setoff.

Dated: Wilmington, Delaware
       November 4, 2005

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
Sean T. Greecher (No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

– and –

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Curtis J. Weidler
Justin G. Brass
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Telecopier: (212) 757-3990

Attorneys for Reorganized Debtors

**File a Notice:**
04-10324-RB Garden Ridge Corporation

## U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Barry, Joseph M. entered on 11/4/2005 at 11:15 AM EST and filed on 11/4/2005

**Case Name:** Garden Ridge Corporation
**Case Number:** 04-10324-RB
**Document Number:** 1968

**Docket Text:**
Notice of Agenda of Matters Scheduled for Hearing *on November 16, 2005 at 9:30 a.m.* Filed by Garden Ridge Corporation. (Barry, Joseph)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** N:\Bankruptcy\Garden Ridge\To be filed\NOTICE - Agenda for 11-16-05 Hearing.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=11/4/2005] [FileNumber=4322836-0] [9cff26b42da1bdca2c5204e2ae4362f9043e48069e37e22405e94700366b094a6045 02586c7a559235b7763f6195ac32d72c49141e3c6c27d27c1cdf7656aa95]]

**04-10324-RB Notice will be electronically mailed to:**

David G. Aelvoet    davida@publicans.com,

John R. Ashmead    ashmead@sewkis.com,

David J. Askanase    dja@hwallp.com,

William R. Baldiga    ,wbaldiga@brbilaw.com, shaundp@brbilaw.com

Elizabeth Banda    arlbank@pbfcm.com, brodriguez@pbfcm.com;hrichardson@pbfcm.com

Joseph M. Barry    bankruptcy@ycst.com

Neil Matthew Berger    neilberger@teamtogut.com, gdiconza@teamtogut.com;msmith@teamtogut.com;dperson@teamtogut.com;jhartman@teamtogut.com;

Ian Connor Bifferato    icb@bgbde.com, jjh@bgbde.com;jmr@bgbdc.com

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

### THE BRANDYWINE BUILDING
### 1000 WEST STREET, 17TH FLOOR
### Wilmington, Delaware  19801
### P.O. Box 391
### Wilmington, Delaware  19899-0391

**Voice: (302) 571-6600**
**Fax: (302) 571-1253**

| FROM: | Tom Hartzell, Paralegal | DATE: | NOVEMBER 7, 2005 |
|---|---|---|---|
| PHONE: | (302) 573-7794 | CLIENT MATTER: | 62883.1001 |

## PLEASE DELIVER AS SOON AS POSSIBLE TO:

| RECIPIENT | COMPANY | TELEPHONE NO. | FACSIMILE NO. |
|---|---|---|---|
| Jenette Barrow-Bosshart, Esq. | Otterbourg Steindler Houston & Rosen, P.C. | 212-661-9100 | 212-682-6104 |
| Vernon Teofan, Esq. Larry Chek, Esq. | Jenkens & Gilchrist | 214-855-4500 | 214-855-4300 |
| Garden Ridge Corporation | Attn: Donald Martin, CFO | 832-391-7403 | 281-578-0999 |
| Alan W. Kornberg, Esq. Curtis J. Weidler, Esq. Justin G. Brass, Esq. | Paul Weiss Rifkind Wharton & Garrison | 212-373-3209 | 212-373-2053 |
| George R. Pitts, Esq. Daniel M. Litt, Esq. | Dickstein Shapiro Morin & Oshinsky | 202-785-9700 | 202-887-0689 |
| Thomas G. Macauley, Esq. | | | 302-427-8242 |
| David B. Stratton, Esq. | Pepper Hamilton LLP | | 302-656-8865 |
| Office of the United States Trustee | Attn: David Klauder, Esq. | 302-573-6491 | 302-573-6497 |
| Richard S. Cobb, Esq. Adam G. Landis, Esq. | Landis Rath & Cobb LLP | 302-467-4400 | 302-467-4450 |
| Ian Connor Bifferato, Esq. | Bifferato, Bifferato & Gentilotti | 302-429-1900 | 302-429-8600 |
| William P Bowden, Esq. Ricardo Palacio, Esq. | Ashby & Geddes | 302-654-1888 | 302-654-2067 |
| Mark D. Collins, Esq. | Richards Layton & Finger | 302-651-7531 | 302-658-6548 |
| R. Karl Hill, Esq. | Seitz, Van Ogtrop & Green, P.A. | 302-888-7604 | 302-888-0606 |
| Sheldon K. Rennie, Esq. | Fox Rothschild LLP | 302-655-7460 | 302-655-7004 |
| Richard A. Keuler, Esq. Mark W. Eckard, Esq. | | | 302-778-7575 |

DB01:1897911 1                                                    062883.1001

| | | | |
|---|---|---|---|
| Tobey M. Daluz, Esq. | | | 302-252-4466 |
| Marc J. Phillips, Esq. | | | 302-658-5614 |
| Michael R. Lastowski, Esq. Christopher M. Winter, Esq. | | | 302-657-4901 |
| William F. Taylor, Jr., Esq. Thomas D. Walsh, Esq. Paul A. Bradley, Esq. | | | 302-984-6399 |
| William A. Hazeltine, Esq. Laurie Selber Silverstein, Esq. | | | 302-658-1192 |
| John H. Knight, Esq. | | | 302-651-7701 |
| John S. Brannon, Esq. | | | 832-397-8221 |
| Jospeh Grey, Esq. Thomas G. Whalen, Jr., Esq. | | | 302-654-5181 |
| Jeffrey P. Wasserman, Esq. | | | 302-658-4982 |
| Mark Minuti, Esq. | | | 302-421-5873 |
| William H. Sudell, Jr., Esq. Daniel B. Butz, Esq. | Morris Nichols Arsht & Tunnell | 302-575-7284 | 302-658-3989 |
| John C. Phillips, Jr., Esq. | Phillips Goldman & Spence | 302-655-4200 | 302-655-4210 |
| Jeffrey C. Wisler, Esq. Christina M. Thompson, Esq. | Connolly Bove Lodge & Hutz, LLP | 302-888-6258 | 302-658-5614 |
| Kathleen Miller, Esq. | | | 302-652-8405 |
| Jason Powell, Esq. | | | 302-575-1714 |
| L. Jason Cornell, Esq. | Counsel for Garden Ridge Hilliard Delaware Business Trust | | 302-656-8920 |
| Brett D. Fallon, Esq. | | | 302-571-1750 |
| Jeremy W. Ryan, Esq. | | | 302-421-5872 |
| Steven M. Yoder, Esq. Chris Ward, Esq. Jeffrey M. Schlerf, Esq. | | | 302-658-6395 |
| Theodore J. Tacconelli, Esq. | | | 302-575-1714 |
| William D. Sullivan, Esq. | | | 302-428-3996 |
| Raymond J. Urbanik, Esq. | | | 214-855-7584 |
| Denise Seastone Kraft, Esq. | | | 888-325-9741 |
| John Ashmead, Esq. | | | 212-480-8421 |

| John P. Dillman, Esq. | | | 713-844-3503 |
| John H. Glover, Esq. | | | 713-658-2553 |

**Total number of pages including these pages:**
**If you have any problems with this transmission, please call (302) 571-6611.**

**Message:** See attached

# Exhibit B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          .    Case No. 04-10324
                                .
                                .
GARDEN RIDGE                    .
  CORPORATION                   .    824 Market Street
                                .    Wilmington, Delaware 19801
                                .
            Debtor.             .    November 16, 2005
. . . . . . . . . . . . . ..          9:40 a.m.


TRANSCRIPT OF OMNIBUS/STAY
BEFORE HONORABLE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Reorganized        Young, Conaway, Stargatt & Taylor
Debtors:                   By:  JOSEPH M. BARRY, ESQ.
                                PAULINE K. MORGAN, ESQ.
                                SEAN T. GREECHER, ESQ.
                           100 West Street
                           Wilmington, DE 19899


For the U.S. Trustee:      Office of the U.S. Trustee
                           By:  DAVID KLAUDER, ESQ.
                           844 King Street
                           Wilmington, DE 19801




Audio Operator:            Brandon J. McCarthy


Proceedings recorded by electronic sound recording, transcript
produced by transcription service

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599

2

APPEARANCES (cont'd):

| | |
|---|---|
| For Huntley, Mullaney & Spargo: | The Bayard Firm<br>By:  STEVEN M. YODER, ESQ.<br>      CHRISTOPHER A. WARD, ESQ.<br>222 Delaware Avenue<br>Wilmington, DE 19899 |
| For Sentry Insurance: | The Bayard Firm<br>By:  KATHRYN D. SALLIE, ESQ.<br>222 Delaware Avenue<br>Wilmington, DE 19899 |
| For Lancaster Colony: | Stevens & Lee<br>By:  JOSEPH GREY, ESQ.<br>1105 North Market Street<br>Wilmington, DE 19801 |
| For Allied Capital: | Zuckerman, Spaeder, LLP<br>By:  ELIZABETH D. POWER, ESQ.<br>919 Market Street<br>Wilmington, DE 19899 |
| For Post-Effective Date Committee: | Pepper, Hamilton, LLP<br>By:  DAVID B. STRATTON, ESQ.<br>1313 Market Street<br>Wilmington, DE 19899 |
| For Informal Landlord Committee: | McCarter & English<br>By:  THOMAS D. WALSH, ESQ.<br>919 Market Street<br>Wilmington, DE 19899 |
| | Thompson & Knight, LLP<br>By:  JOHN S. BRANNON, ESQ.<br>1700 Pacific Avenue<br>Dallas, TX 75201 |
| For Chiron Financial Corp.: | Haynes & Boone, LLP<br>By:  PATRICK L. HUGHES, ESQ.<br>1 Houston Center<br>Houston, TX 77010 |
| For Sharon & Michael Grizzaffi: | Ashby & Geddes<br>By:  RICARDO PALACIO, ESQ.<br>222 Delaware Avenue<br>Wilmington, DE 19899 |

**J&J COURT TRANSCRIBERS, INC.**

3

APPEARANCES (cont'd):

For Daniel Ferguson:     Buchanan, Ingersoll, PL
                            By:  WILLIAM D. SULLIVAN, ESQ.
                            1007 North Orange Street
                            Wilmington, DE 19801

For Creditors          Otterbourg, Steindler, Houston &
Committee:               Rosen, P.C.
                            By:  JENETTE A. BARROW-BOSSHART, ESQ.
                            230 Park Avenue
                            New York, NY 10169

TELEPHONIC APPEARANCES:

For Three Cities      Seward & Kissel
Research:              By:  JOHN R. ASHMEAD, ESQ.
                            One Battery Park Plaza
                            New York, NY 10004

                            By:  MR. GLOVER, ESQ.
                            Texas

4

1          THE COURT:  Be seated, please.  Good morning.

2          MR. BARRY:  Good morning, Your Honor.  For the

3  record, Joseph Barry, Young, Conaway, Stargatt & Taylor on

4  behalf of the reorganized debtors.  Understanding that Your

5  Honor has limited time for us today I'd like to jump right in

6  to the amended agenda that we filed.

7          THE COURT:  That would be fine.

8          MR. BARRY:  Your Honor, item Number 1 is pretrial

9  conference in Garden Ridge against Wausau.  We have settled

10  that matter.  The parties are in the final stages of finalizing

11  the documentation, memorializing that settlement which we

12  expect to be submitted under certification of counsel prior to

13  the next hearing.

14          THE COURT:  Thank you.

15          MR. BARRY:  Your Honor, item Number 2 is a pretrial

16  conference in Sentry against Garden Ridge.  Your Honor, there

17  is a motion for preliminary injunction that is subjudice and

18  the parties are generally awaiting the Court's ruling on that

19  matter prior to undertaking any further action in the suit.

20  Therefore the parties have jointly requested that the matter be

21  put over pending the Court's adjudication of the preliminary

22  injunction motion.

23          Your Honor, the next item on the agenda is item

24  Number 3.  It's the reorganized debtor's motion to delay the

25  automatic entry of a final decree.  Your Honor, under local

1  much.

2          MR. HUGHES:  Thank you, Your Honor.

3          THE COURT:  The matter is taken under advisement and

4  my ruling will issue.

5          MR. HUGHES:  Thank you.  May we be excused, Your

6  Honor.

7          THE COURT:  Yes.  And Mr. Barry you may proceed.

8          MR. ASHMEAD:  Your Honor, this is Mr. Ashmead on the

9  phone.  May I be excused now?  The matters that I had an

10  interest in have been dealt with by the Court.

11          THE COURT:  Yes.  Thank you, Mr. Ashmead.

12          MS. MORGAN:  And thank you, Your Honor, Pauline

13  Morgan again.  May I also be excused?  I have another matter

14  today?

15          THE COURT:  Sure.

16          MS. MORGAN:  Thank you, Your Honor.

17          MR. ASHMEAD:  Thank you, Your Honor.

18          THE COURT:  You are quite welcome.

19          MR. BARRY:  Thank you, Your Honor.  Again, Joseph

20  Barry of Young, Conaway for the reorganized debtor.  Your

21  Honor, the last and final item on the agenda is the motion of

22  Daniel Ferguson to effect a setoff.  Again, the parties have

23  agreed to address solely the issue of whether or not Mr.

24  Ferguson's claim qualifies for a setoff and we have both

25  brought witnesses to court today.  As indicated on the agenda

1  both parties would like to present the Court with a very brief

2  evidentiary presentation.  My recommendation subject to the

3  comments of Mr. Sullivan would be to -- the parties to dispose

4  of opening arguments, put on our witnesses and wrap everything

5  up in closing.

6        THE COURT:  I don't recall either party pursuant to

7  local rules requesting an evidentiary hearing on this matter by

8  setting forth a need for time beyond that which is typically

9  allowed with contested matters.  Is that correct, Mr. Barry?

10        MR. BARRY:  Your Honor, we didn't expressly request

11  additional time from the Court, but I will say that in our

12  agenda we indicated that we would be -- we were requesting that

13  we be able to put on evidence and oral argument.

14        THE COURT:  I think local rule has to be respected.

15  And that having not been respected I'll just hear argument from

16  counsel.

17        MR. BARRY:  Very well, Your Honor.

18        THE COURT:  With regard to the papers, I have

19  reviewed the papers so you may feel free to address the Court

20  accordingly.  Good morning.

21        MR. SULLIVAN:  Good morning, Your Honor, Bill

22  Sullivan from the law firm of Buchanan, Ingersoll on behalf of

23  Daniel Ferguson.  Your Honor, Mr. Ferguson is here in the

24  courtroom.

25        Your Honor, I apologize.  I had spoken to Mr. Barry

**J&J COURT TRANSCRIBERS, INC.**

1  and I thought we had put in a request for evidence, but I'm not

2  going to argue with Your Honor about that because we believe

3  that this matter can be decided on the papers.  However, if

4  Your Honor does view that evidence is necessary then we would

5  request that you hold a further hearing in accordance with the

6  local rules.

7          That being said --

8          THE COURT:  Let me say this.  Because the docket was

9  set some time ago and I did not have the benefit of request

10  from either counsel seeking an evidentiary hearing on this

11  matter time was not allocated for that purpose.  But to the

12  extent you are requesting an evidentiary hearing I don't mind

13  putting this over to give you an opportunity to fully present

14  whatever evidence you have.  I don't want to short change you

15  the opportunity if you feel that an evidentiary hearing would

16  be the most appropriate manner in which to present the

17  respective parties positions.

18          MR. SULLIVAN:  And Your Honor, my view is that we

19  should argue it today.

20          THE COURT:  Very well.  Mr. Barry, what is your

21  comment in that regard?

22          MR. BARRY:  Your Honor, I'm amenable to arguing

23  today.

24          THE COURT:  Very well.

25          MR. BARRY:  Thank you very much for the Court's

1   indulgence.

2            THE COURT:  Sure.  You may proceed.

3            MR. SULLIVAN:  Your Honor, this motion was originally
4   filed in April prior to the confirmation hearing in this
5   matter.  It is a motion for the setoff of -- to confirm the
6   setoff of mutual debts between Mr. Ferguson and the Garden
7   Ridge entities.  Your Honor, the motion was continued for
8   several reasons one being the confirmation process, another
9   change in judges and so we are finally here today.

10           And with respect to the motion as set forth in the
11  papers, Your Honor, Mr. Ferguson was employed --

12           THE COURT:  Let me see if I can save us both some
13  time, counsel.  I reviewed the papers and I think I understand
14  the issues here.  Under provisions of 553 of the Code your
15  client Mr. Ferguson is seeking to offset what purportedly are
16  mutual obligations based upon severance pay allegedly owed to
17  him by the debtor Garden Ridge Management.  And there is
18  another entity Garden Ridge, LP.  I understand that the debtor
19  acknowledges that he owes Garden Ridge a certain sum of monies
20  and he believes that these mutual obligations that are
21  addressed under 553 and they should be setoff and if so the
22  deficiency which he asserts is in the amount of some $60,000
23  should be relegated to a general unsecured claim in his favor.

24           MR. SULLIVAN:  That's correct, Your Honor.

25           THE COURT:  I understand the prepetition and Texas

56

1  state court Mr. Ferguson prosecuted a cause of action against
2  both of the Garden Ridge entities which are the subject of this
3  action and that is pending, is that correct?

4             MR. SULLIVAN:  that's correct, Your Honor.

5             THE COURT:  Now, at the time the present bankruptcy
6  was filed what was the status of the state court action?

7             MR. SULLIVAN:  Your Honor, upon the filing of the
8  present bankruptcy my understanding is that there was discovery
9  going on in the state court action and then a suggestion of
10 bankruptcy was filed in that case.  So my understanding is that
11 case has remained stayed since the filing --

12            THE COURT:  Discovery had not concluded?

13            MR. SULLIVAN:  Your Honor, I was not counsel in that
14 case but I've seen papers indicating that there was discovery.
15 I don't believe there was a trial date set, but I can't speak
16 to that.

17            THE COURT:  I see.  Now, I understand further that
18 the note was issued by Garden Ridge, LP.  Is that correct?

19            MR. SULLIVAN:  That's correct, Your Honor.

20            THE COURT:  But the severance pay was to be paid by
21 Garden Ridge Management.  Is that also correct?

22            MR. SULLIVAN:  That is not correct, Your Honor.

23            THE COURT:  Could you clarify that for me.

24            MR. SULLIVAN:  Your Honor, all of the employment
25 documents that the parties would enter in this case and that

57

1   the parties have exchanged refer to the employer as Garden

2   Ridge.  It does not define in the documents that you may have

3   been seen as attached as exhibits including Mr. Ferguson's

4   employment agreement when he came to work for Garden Ridge in

5   2001 do not define the employer as Garden Ridge Management or

6   as Garden Ridge, LP.  They simply define the employer as Garden

7   Ridge.

8           THE COURT:  Thank you.  You may proceed.

9           MR. SULLIVAN:  In further of that, Your Honor, the

10  debtor's own schedules indicate that severance benefits were

11  the responsibility of Garden Ridge, LP.  Specifically, Your

12  Honor, the schedules for the -- Your Honor, if I can just get a

13  copy.

14                          (Pause)

15          MR. BARRY:  Your Honor, if I may interject an

16  objection.  We're merely arguing this.

17          THE COURT:  Objection to what?

18          MR. BARRY:  Excuse me?

19          THE COURT:  Objection to what?

20          MR. BARRY:  Objection to first of all Mr. Sullivan's

21  characterization of what the debtor's schedules represent.

22  We're not here for an evidentiary hearing any longer, we're

23  arguing the law.  And second, there's no evidence that the

24  debtor's schedules represent anything of the kind, and in fact

25  they do not.

58

1          THE COURT:  I don't find it appropriate at this
2   point.  This is argument with regard to the motion that's
3   before the Court.  You'll be given full opportunity to rebut
4   whatever you differ with, Mr. Barry.

5          MR. BARRY;  Very well, Your Honor.  Thank you very
6   much.

7          THE COURT:  Your objection is overruled.  You may
8   proceed, Mr. Sullivan.

9          MR. SULLIVAN:  Your Honor, I'm looking at a copy and
10  I'll hand counsel a copy of the declaration concerning debtor's
11  statement of financial affairs which was signed by Armand
12  Shapiro the CEO of Garden Ridge Management, Inc. signing it for
13  Garden Ridge, LP.  This was filed February 16th 2004.  And it
14  says that these are an accurate statement of Garden Ridge, LP's
15  financial affairs.

16         THE COURT:  What does that have to do with the base
17  salary and other fees that are being sought by Mr. Ferguson?

18         MR. SULLIVAN:  Well, what it has to do is because
19  under the standard schedule that any debtor has to file Section
20  23 requires a debtor to list any compensation in any forms such
21  as bonuses, loans, stock redemptions or options paid to any
22  insiders during the prior year.  And Your Honor, this
23  particular schedule references Exhibits 3(b)(1), 3(b)(2), and
24  23(1).  And Exhibit 23(1) lists, very last page of the
25  schedule, severance payments made to former executives between

1  January 3 of '03 and January 24th of '04 and lists a group of

2  terminated executives.

3          So, Your Honor, this is evidence that severance

4  payments to terminated executives were made by Garden Ridge,

5  LP.  It's a direct refutation of the allegation in their

6  response that somehow these severance obligations were the

7  responsibility of Garden Ridge Management.  The schedules have

8  other evidence including that payments on Schedule 3(B)(2) were

9  made to Mr. Ferguson other than in the form of salary and

10  bonus.  So the concept that the debtors put forward in their

11  response that somehow Garden Ridge Management is responsible

12  for the severance benefits is not correct and it --

13          THE COURT:  Mr. Sullivan, is Garden Ridge Management

14  as well as Garden Ridge, LP, are they separate legal entities?

15          MR. SULLIVAN:  Yes, they are, Your Honor.

16          THE COURT:  Within the states in which they're

17  incorporated.

18          MR. SULLIVAN:  My understanding is that they are.

19          THE COURT:  You may proceed.

20          MR. SULLIVAN:  Your Honor, we believe that this

21  matter is controlled by the confirmation order in this case.

22  And Your Honor, in the findings of fact section of the

23  confirmation order which was entered by this Court, not Your

24  Honor, but a prior Judge, April 28th 2005.  Section 23 is

25  identified as substantive consolidation.  And it says, Article

**J&J COURT TRANSCRIBERS, INC.**

1  6 of the plan calls for the substantive consolidation of the

2  debtor's estates.  Based on the <u>Martin</u> declaration the Court

3  finds that such substantive consolidation of the debtor's

4  estates is justified and appropriate in these Chapter 11 cases.

5  In the <u>Martin</u> declaration <u>Martin</u> attested to the following

6  facts which were not controverted at the confirmation hearing.

7  A) the debtors share a common management.  And the debtors are

8  the six debtors whose cases have been jointly administered in

9  this case including Garden Ridge, LP and Garden Ridge

10  Management, Inc.

11          THE COURT:  The severance agreement that's the

12  subject of this hearing and the documents that events and

13  obligation owed by the debtor to Mr. Ferguson they were

14  executed pre or post-petition?

15          MR. SULLIVAN:  Pre-petition, Your Honor.

16          THE COURT:  Pre-petition.  So noticing the

17  consolidation clause that you've just addressed to the Court's

18  attention as part of the confirmation order, is there any

19  reason why this Court should not construe this matter the

20  status of these obligations that purportedly are mutual as of

21  the petition filing date as opposed to any period post-

22  confirmation?

23          MR. SULLIVAN:  Your Honor, none of the facts and

24  circumstances relevant to this issue arise post-confirmation.

25          THE COURT:  Except for the fact that you representing

**J&J COURT TRANSCRIBERS, INC.**

1   now that as of the confirmation hearing date these debtors were
2   consolidated.

3           MR. SULLIVAN:  And that's right.

4           THE COURT:  And prior to the confirmation hearing
5   there was no consolidation, is that correct?

6           MR. SULLIVAN:  Well, Your Honor, let me get to the
7   significance of the substantive consolidation with respect to
8   these events.  This Section 23 finding of fact goes on to say
9   that the debtors prepare and consolidate financial reports,
10  they filed consolidated tax returns, they utilize a centralized
11  cash management system and that each of the debtors was a co-
12  obligor under the dip credit facilities.

13          It says based on the <u>Martin</u> declaration the Court
14  finds that there is a substantial identity, an inseparable
15  relationship between the debtors and that the benefit of
16  consolidation outweigh any harm to the creditors.

17          Paragraph 30 of this order further indicates that
18  this has a binding effect on both the debtors and all creditors
19  holding claims against and interest in the debtors.  So Your
20  Honor, the import of this is that substantive consolidation
21  renders all claims filed against any entity as filed against
22  the consolidated debtor.  And the Court has ratified the fact
23  that despite the fact that separate entities were set up under
24  Texas law the debtor's operations were joint and consolidated
25  and therefore there's no basis to distinguish between a claim

62

1  against one entity --

2         THE COURT:  They were joint and consolidated as of

3  what time period?

4         MR. SULLIVAN:  They operated on a consolidated basis

5  pre-petition, Your Honor, for purposes of --

6         THE COURT:  Documentation wise what supports that

7  representation?

8         MR. SULLIVAN:  Well, the Martin declaration talks

9  about that.  And again, it goes to the -- this is all talking

10 about how the debtors operated pre-petition, Your Honor, not

11 post-petition.

12        THE COURT:  I understand.

13        MR. SULLIVAN:  Because there --

14        THE COURT:  Is there in the form of documentation

15 that shows consolidation pre-petition of these co-debtors?

16        MR. SULLIVAN:  Well, there's no court order finding

17 that.

18        THE COURT:  I didn't say court order, any

19 documentation that shows pre-petition that these affiliated

20 debtors were consolidated?

21        MR. SULLIVAN:  I don't think that there's -- when you

22 say were consolidated that to me means a legal finding.  I

23 think there's --

24        THE COURT:  I'm just asking if --

25        MR. SULLIVAN:  -- there's evidence that they acted in

63

1  a --

2           THE COURT:  You made the representation that they

3  were consolidated and I'm asking if there's any documentary

4  proof to support that.  Other than the declarations.

5           MR. SULLIVAN:  Your Honor, we would be prepared to

6  put on the testimony of Mr. Ferguson as to who he worked for,

7  what he did.  There's evidence --

8           THE COURT:  You're not responding to my question.  Is

9  there any documentary proof that evinces consolidation of these

10  affiliated debtors pre-petition?

11           MR. SULLIVAN:  Documentary proof such as there are

12  tax returns that they filed on a consolidated basis.  That's

13  one example.  They maintained a single general ledger sheet

14  during the course of their operation.

15           THE COURT:  Gentlemen, I'm going to reverse my

16  earlier comment.  I want to set this matter over for an

17  evidentiary hearing because I think I have more questions than

18  I have answers forthcoming at this point.  And I realize both

19  of you have indicated that you would prefer to have the Court

20  rule on just your arguments, but otherwise if I have to make

21  specific findings they have to be made on evidence or unless

22  the parties can agree on documents they wish to submit to the

23  Court with mention of the evidence and you can index them

24  accordingly.  I can't take them in that fashion.  But otherwise

25  I think you're trying to show me evidence at this point that

**J&J COURT TRANSCRIBERS, INC.**

1  may not have been attached to your respective papers.  And that
2  could only present some difficulty.  Mr. Sullivan.

3          MR. SULLIVAN:  Your Honor, if Your Honor does feel
4  it's appropriate to see evidence of how they acted pre-petition
5  then we would be glad to present evidence at an evidentiary
6  hearing.

7          THE COURT:  Thank you.  Take two minutes to conclude
8  your comments this morning.

9          MR. SULLIVAN:  Okay.  Thank you, Your Honor.  Your
10 Honor, the substantive effect of the substantive consolidated
11 is stated at paragraph 25 of the plan which is binding on all
12 parties.  And on Page 25 it says each and every claim filed or
13 to be filed in the Chapter 11 case of any consolidated  debtors
14 shall be deemed filed against the consolidated debtors and
15 shall be deemed one claim against an obligation of the
16 consolidated debtors.  And Your Honor, that's the controlling
17 fact.

18         Just briefly, Your Honor, the debtor's response does
19 not address the fact of substantive consolidation at all except
20 in a footnote where they reference a single case the <u>Sentinel</u>
21 <u>Products</u> case.  And they say that that shows that the act of
22 substantive consolidation is not material.  And, Your Honor, it
23 was not material in that case.

24         THE COURT:  Mr. Sullivan, is Garden Ridge Management
25 the parent of Garden Ridge, LP?

**J&J COURT TRANSCRIBERS, INC.**

1        MR. SULLIVAN:  It owns a one percent share.  It's a

2   partner in Garden Ridge, LP.  I think it's a one percent

3   partner or limited partner.

4        THE COURT:  Thank you.  Your time has concluded,

5   counsel.  Mr. Barry, you may proceed.  You have equal time.

6        MR. BARRY:  Thank you very much, Your Honor.  I

7   appreciate that.  I'll actually address Your Honor's question

8   regarding substantive consolidation first.  There is actually a

9   document that evidences this.  Whether or not you should

10  construe substantive consolidation as of the petition date or

11  the effective date of the plan I would refer Your Honor and I

12  have a copy of the plan.  It's Article 8F of the debtor's

13  confirmed plan and again there was no appeal of the order

14  confirming that plan states as follows, Your Honor, it states,

15  nothing contained in this plan or the confirmation order shall

16  be deemed a waiver or relinquishment of any legal or equitable

17  defense that the debtors had immediately prior to the petition

18  date.  The reorganized debtors shall have retained, reserve and

19  be entitled to assert all such legal or equitable defenses that

20  the debtors had immediately prior to the petition date as fully

21  as if the Chapter 11 cases had not been commenced.

22        Now, our position is that is rather clear that prior

23  to the petition date the debtors had a defense, an equitable

24  defense to Mr. Ferguson's setoff claim.  The reorganized

25  debtors by virtue of the plain meaning of the plan are now

66

1 entitled to assert that defense in the words of the plan as if
2 the case had never been commenced.

3       So, Your Honor, I think that that addresses the
4 question of whether or not substantive consolidation had any
5 impact at all, the defense that the debtors are asserting to
6 Mr. Ferguson's setoff claim.  I do have a copy of the plan for
7 Your Honor if you wish me to hand it up to the Court.

8       THE COURT:  Present it following the conclusion of
9 your argument.

10       MR. BARRY:  I will, Your Honor.  A couple of brief
11 points.  We also submit, Your Honor, that even if the plan was
12 not so plain on its face there is case law that supports our
13 position that substantive consolidation in and of itself does
14 not eviscerate a defense to a claim that a party can have.  And
15 I would cite Your Honor to In Re Murray Industries.  It's a
16 bankruptcy case out of the middle district of florida.

17       THE COURT:  Is that cited in your papers?

18       MR. BARRY:  Your Honor, no, it wasn't cited in our
19 papers, but we did not file a reply under local rules.  We
20 don't have an automatic right to file a reply.  Discovery
21 honestly just concluded on Monday or else we would have.

22       THE COURT:  You may proceed.

23       MR. BARRY:  To quote Murray Industries, Your Honor,
24 it states substantive consolidation of several states means one
25 thing and one thing only, that all assets of the several

**J&J COURT TRANSCRIBERS, INC.**

67

1  entities are pooled and all creditors of the several entities

2  are entitled to share in the pooled assets in accord with their

3  respective rights.  It would certainly be a violation of due

4  process if the order of substantive consolidation would operate

5  to destroy defenses and rights which existed prior to the entry

6  of the order of substantive consolidation.

7       So, Your Honor, again, we think first the plan is

8  plain on its face and explicitly reserve the defense that we

9  are asserting to the setoff claim.  We think second, even if it

10 wasn't case law supports the notion that substantive

11 consolidation though it may be a pooling of assets it does not

12 work to eviscerate a defense to a claim that in deed either a

13 creditor or the debtor may have that existed prior to the order

14 for substantive consolidation.

15      Your Honor, my next point is that the parties don't

16 dispute that Mr. Ferguson was an officer of the company.  Now,

17 there's an issue of fact as he believes he was employed by some

18 amorphous entity called Garden Ridge.  We submit that he was

19 employed by Garden ridge Management.  And again, I dispute what

20 Mr. Sullivan said all the employment documents don't say that

21 the was employed by just Garden Ridge.  In fact, all the

22 paychecks that we submitted with our papers indicate that he

23 was paid by Garden Ridge Management, Inc.  His W-2s reflected

24 that he was employed by Garden Ridge Management, Inc.  And

25 again it's not disputed that Mr. Ferguson was an officer of the

1  company and he held a fairly high level position, yet he
2  professes not to know by whom he was employed.

3          Your Honor, on that point, there's case law that says
4  that if you sit in a fiduciary capacity then you cannot qualify
5  for a claim of setoff.  Here, as an officer of the company Mr.
6  Ferguson sat in a fiduciary capacity.  That's true whether or
7  not we're talking about Garden Ridge, LP who's formed in the
8  laws of the state of Texas or we're talking about Garden Ridge
9  Management who's formed in the laws of the state of Delaware.
10 Both those jurisdiction impose fiduciary obligation on officers
11 of the company.  Here Mr. Ferguson sat in a fiduciary role.  As
12 such mutuality cannot exist for purposes of setoff.  The theory
13 is, Your Honor, that if I'm an officer of the company and I'm
14 entitled to payment salary or severance for fulfillment of my
15 fiduciary duties well that's one role and I'm acting in a
16 fiduciary capacity.  If, however, I take a loan back from the
17 company well, I'm not acting in a fiduciary capacity, I'm
18 acting in my own self-interest.  And there's a body of case law
19 that supports that to the extent someone sits in a fiduciary
20 capacity they can't meet the mutuality standard because they
21 don't sit -- the parties don't sit in the same positions or to
22 meet that mutuality requirement.

23         So we submit that even if Your Honor accepted as true
24 everything that Mr. Sullivan has said and every piece of
25 evidence that Mr. Ferguson would put on that would tend to

**J&J COURT TRANSCRIBERS, INC.**

69

1  implicate that the debtor's operated as a single unit it

2  doesn't matter because his claim simply can't qualify for

3  setoff because he was a fiduciary of whatever company he worked

4  for he was an officer and as such he was a fiduciary and can't

5  meet the mutuality requirement.

6          I guess, Your Honor, my final point without getting

7  into the facts of the case the facts that we cited in our --

8  the cases that we cited in our papers, Lang and Frotty and

9  Sentinel are clear that the credit of a subsidiary can't be

10 setoff against the debt of a parent or vice-versa.  And that's

11 true whether or not they're partners, affiliates, subsidiaries.

12 It really doesn't matter.  Now in this instance --

13         THE COURT:  I asked Mr. Sullivan the question is

14 Garden Ridge Management an affiliate, subordinate, or parent of

15 Garden Ridge, LP?  What is your understanding of that

16 relationship?

17         MR. BARRY:  Garden Ridge Management, Inc. is the

18 general partner with another entity as the partnership Garden

19 Ridge, LP.  Meaning that Garden Ridge Management is the general

20 partner of LP.  Garden Ridge Management is in the business of

21 employing people.  They employ all employees and all

22 management.  They then essentially --

23         THE COURT:  I think you told me a bit more than I

24 need to know.

25         MR. BARRY:  I apologize, Your Honor.

J&J COURT TRANSCRIBERS, INC.

1           THE COURT:  I just want to find out when you

2    represent that they are affiliates or not in terms of whether

3    there's mutuality of an obligation I'm trying to figure out the

4    relationship of Garden Ridge Management to that of Garden

5    Ridge, LP.

6           MR. BARRY:  Management is a one percent general

7    partner in LP.  LP is the subsidiary of Garden Ridge

8    Management, is the short answer.  And again --

9           THE COURT:  Subsidiary or limited partner?

10          MR. BARRY:  I beg your pardon?

11          THE COURT:  Subsidiary or a limited partner?  Or

12   nonmanaging partner within a limited partnership.  Are they

13   both in one limited partnership?

14          MR. BARRY:  No, Garden Ridge Management, Inc. hold a

15   one percent general partnership interest in Garden Ridge, LP.

16   The remaining 99 percent is held by another Garden Ridge entity

17   called Garden Ridge Investment, Inc.

18          THE COURT:  I understand.  Thank you.  Do you have

19   further comment?

20          MR. BARRY:  Just very briefly, Your Honor, in their

21   papers Mr. Ferguson referred to this as being a permissible

22   triangular setoff.  We think that that body of case law simply

23   doesn't apply here.  The body of case law referred to requires

24   an express separate agreement by the parties clearly

25   establishing the intent to treat the subsidiary and the parent

1 as one entity.

2         Here no such agreement exists.  In fact you just
3 heard Mr. Sullivan say that Mr. Ferguson believed he was
4 employed by "Garden Ridge" and not any particular entity.
5 There's just simply no basis to believe that there was an
6 independent agreement by the parties to treat them as one.

7         And I guess, finally, Your Honor, the Texas state
8 court cases cited in Mr. Ferguson's papers simply don't support
9 the proposition that the setoff is even permissible under Texas
10 law even if not permissible under 553.  The Coronato opinion
11 that they cite has been disapproved by the Texas supreme court
12 so we don't think that that is very useful.  The cases are
13 personal injury cases that discuss whether someone is an
14 employee for purposes of imposing liability -- personal injury
15 liability.  The term setoff doesn't appear anywhere in any of
16 those opinions.

17         And finally, Your Honor, with respect to what those
18 cases held they were -- involved the right to control the
19 employee.  Here again, Mr. Ferguson has said that he just
20 thought he was employed by some entity called Garden Ridge.  He
21 really can't specify who controlled his employment.  We submit
22 that with out papers we submitted his paychecks, we have his W-
23 2s.  The evidence clearly established that Garden Ridge
24 Management, Inc, was his employer and there's nothing that
25 could refute that.

1              THE COURT:   Thank you.

2              MR. BARRY:   Thank you very much for your time, Your

3    Honor.

4              THE COURT:   Thank you, Mr. Barry.  Mr. Sullivan, I've

5    heard equally from both parties.  With regard to further

6    disposition of this matter initially the parties desired a --

7    under the impression this Court would provide an evidentiary

8    hearing on it.  But as I've indicated earlier that was not to

9    be.  And then you concluded that the Court address the matter

10   on the merits through your arguments.  Having heard equally

11   from both parties having reviewed the document submitted thus

12   far I would prefer submission of post-argument briefs by both

13   parties to be filed with the Court no later than two weeks from

14   today's date.

15             Also, to the extent that the parties consult and

16   agree upon submission of documents that may not have been

17   submitted with your original papers you can see if you can

18   agree submission of additional documents that you wish for the

19   Court to consider in support of your respective positions.

20   Otherwise two weeks from today's date is the deadline for

21   submission of the post-argument briefs and that matter's taken

22   under advisement.

23             MR. BARRY:   Your Honor, shall we confer on a

24   stipulation of facts as well?

25             THE COURT:   Yes, if that's something the parties are

73

1  able to reach that would be fine.

2          MR. BARRY:  Very well.  Thank you very much for your

3  time today, Your Honor.

4          THE COURT:  Thank you.  Did you have a question, Mr.

5  Sullivan?

6          MR. SULLIVAN:  No, Your Honor.  I guess the only --

7  if there's not an agreement on a certain document or a certain

8  fact --

9          THE COURT:  Again, that's not the subject of the

10  stipulation.

11          MR. BARRY:  No, no, I'm saying then each party can

12  submit their own document, is that what I understand?

13          THE COURT:  You can submit stipulated documents.  If

14  not with regard to the post-argument briefs you may submit

15  documents that support the additional briefing that's to take

16  place.  Thank you.

17          MR. BARRY:  Your Honor, I think one matter was

18  carried over to the end of the agenda.

19          THE COURT:  That goes back to item Number 3, I

20  believe, is that correct?

21          MR. BARRY:  That is, Your Honor, and I promise we

22  will not take up any more of your time after this matter.  But

23  I do appreciate the Court's indulgence.

24          THE COURT:  Very well.  You may speak to item Number

25  2 again.

1          MR. BARRY:  Your Honor, I believe Mr. Glover was on
2    the line and he was the one --

3          THE COURT:  Mr. Glover, are you still there, sir?

4          MR. GLOVER:  I am still here, Your Honor.

5          THE COURT:  I'm having difficulty hearing you, Mr.
6    Glover, could you speak up?

7          MR. GLOVER:  Your Honor, I am still here.

8          THE COURT:  Okay.  Yes.  For some reason the volume
9    is not very loud.  I can barely hear you, Mr. Glover.

10         MR. GLOVER:  I'm not sure what I can do about that.
11   This device I'm using doesn't have --

12         THE COURT:  The volume is fine now, Mr. Glover.

13         MR. GLOVER:  Thank you.  Your Honor, I just wish to
14   bring to the Court's attention some change in status of the
15   matters here in Houston.  As the Court may recall there is an
16   application for injunction by Garden Ridge to stay a
17   declaratory judgment action in Texas.  Simultaneous with the
18   injunction action filed by Garden Ridge in the Delaware court
19   it also sought its own declaratory judgment action in the
20   bankruptcy court.  So we had competing declaratory judgment
21   actions pending, the first filed one being the one in Texas,
22   state district court, the second filed one being the bank filed
23   as an adversary in the bankruptcy court.

24         The Texas state adversary -- excuse me, the Texas
25   state injunction proceeding was removed by Garden Ridge and

75

1  Sentry to federal court where it currently sits.  The

2  Grizzaffis in reply to the removal have filed a remand action

3  and that is pending to be submitted to the Court on November

4  25th of this month.

5          THE COURT:  Well, Mr. Glover, which federal court was

6  the injunctive matter in Texas removed to?

7          MR. GLOVER:  It's Judge Rosenthal and Your Honor, I

8  don't have that file in front of me.  It's a federal district

9  court, Judge Rosenthal.

10          THE COURT:  Which --

11          MR. GLOVER:  Southern District of Texas.

12          THE COURT:  Thank you.

13          MR. GLOVER:  I'm sorry.  Your Honor, the submission

14  of the remand action is set for November 22nd -- excuse me,

15  November 25th.  Simultaneous with this there has been some

16  indication by Sentry, that's the insurance company involved

17  here, that it would like to move forward with an attempt to

18  negotiate a settlement of the case, but that it cannot do so

19  because of the controversy surrounding this $250,000 deductible

20  and the letter of credit.

21          We're simply pointing out the November 25th

22  submission date.  We believe that to be a critical date.  And

23  as this Court knows the application for injunction has been

24  pending with this Court for several months.  And the Grizzaffis

25  would greatly appreciate if we could move forward with a ruling

J&J COURT TRANSCRIBERS, INC.

1 | by November 25th so that would provide some guidance to the
2 | Texas federal district court as to the position of the
3 | bankruptcy court on the jurisdiction.

4 | THE COURT:  Mr. Glover, thanks for that update on the
5 | status of the matters pending in Texas, and particularly for
6 | the November 25th date that is of interest to the parties.  Mr.
7 | Barry, do you have further comment in this regard?

8 | MR. BARRY:  Your Honor, I do not.  I believe that
9 | that concludes our business with the Court today.

10 | THE COURT:  Very well.  Thank you.

11 | MR. BARRY:  Thank you, Your Honor.

12 | THE COURT:  Yes, Mr. Sullivan.

13 | MR. SULLIVAN:  Your Honor, I have one more issue.

14 | MR. GLOVER:  Your Honor, may I be excused?

15 | THE COURT:  Mr. Glover, you may be excused.

16 | MR. GLOVER:  Thank you, Your Honor.

17 | MR. SULLIVAN:  You've indicated that we're going to
18 | submit, I guess, simultaneous briefs in two weeks.

19 | THE COURT:  Yes.  There won't be any replies or
20 | surreplies to the briefs.  And they both have to be submitted
21 | no later than two weeks from today's date.

22 | MR. SULLIVAN:  That's fine, Your Honor.  The only
23 | thing that I'm concerned about is there was an argument made
24 | today which was never made in the papers about Mr. Ferguson
25 | sitting in a --

J&J COURT TRANSCRIBERS, INC.

1          THE COURT:  Sir, I have quite frankly concluded my

2    concerns and instructions on this matter.  Submission is two

3    weeks from today's date.

4          MR. SULLIVAN:  Thank you, Your Honor.

5          THE COURT:  Thank you.  That concludes all matters on

6    the Garden Ridge matter and we'll move -- we'll stand in recess

7    for ten minutes at which time I'll proceed with the Encore

8    Investment matter.

9                          *  *  *  *  *

10                  C E R T I F I C A T I O N

11          I, Kimberly Upshur, court approved transcribers,

12    certify that the foregoing is a correct transcript to the best

13    of my ability, from the official electronic sound recording of

14    the proceedings in the above-entitled matter.

15

16    _Kimberly Upshur_                    DATE:   November 23, 2005

17    KIMBERLY UPSHUR

18    J&J COURT TRANSCRIBERS, INC.

19

20

21

22

23

24

25

# Exhibit C

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:                                          In Proceedings Under Chapter 11

GARDEN RIDGE CORPORATION,          Case No.: 04-10324
*et al.,*

                    Debtors.              JUDGE RANDOLPH BAXTER

MEMORANDUM OF OPINION AND ORDER

Before the Court is the motion of Daniel Ferguson ("Ferguson") for relief from the automatic stay under § 362(d) of the United States Bankruptcy Code to the extent necessary to set off certain amounts owing from and owed to the Debtors.[1]

The Court acquires core matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(b). Upon an examination of the parties' respective briefs and supporting documentation, and after conducting a hearing on the matter, the following findings of fact and conclusions of law are hereby rendered:

                              *

Garden Ridge Corporation and its jointly administered affiliate co-debtors (the "Debtors") operate home decor retailers with 35 stores in 13 states throughout the South, Midwest, and Mid-Atlantic regions of the United States. Garden Ridge Management, Inc. ("GRM") is a management services company that employs all of the staff and management utilized at the Garden Ridge stores. Garden Ridge, L.P. ("GRLP"), the entity that operates all of

---

[1] Garden Ridge, L.P., Garden Ridge Corporation, Garden Ridge Management, Inc., Garden Ridge Finance Corporation, Garden Ridge Investments, Inc., and Garden Holdings, Inc. (collectively, the "Debtors" or the "Reorganized Debtors").

*2064*

in severance pay (comprising one year of base salary), and $60,000 in unpaid relocation costs.[4]

On February 2, 2004, the Debtors filed for protection under chapter 11 of the Bankruptcy Code. The schedules filed by GRM (the "GRM Schedules")[5] included an unliquidated claim of Ferguson related to the State Court Action. No accounts receivable from Ferguson were listed on the GRM Schedules. Because GRLP was a named defendant in the State Court Action, the schedules filed by GRLP (the "GRLP Schedules")[6] also included an unliquidated claim of Ferguson. The GRLP Schedules listed the Note payable from Ferguson.

On April 16, 2004, Ferguson filed an unsecured, non-priority claim in the amount of $310,000 (the "Claim").[7]

The consolidated chapter 11 plan of GRM and GRLP (the "Plan"), along with the other Garden Ridge entities, was confirmed on March 29, 2005.[8]

Ferguson asserts that the amount of $250,000 owed by Ferguson to GRLP on the Note should be setoff by the amount of $310,000 owed by the Debtors to Ferguson for severance fees and various unpaid relocation costs. Ferguson argues that the net result would place him in the position of an unsecured creditor for the $60,000 deficiency outstanding.

**

"A creditor who has the right to setoff may obtain relief from the automatic stay in order

---

[4] Exhibit D to Debtors' Objection.

[5] Exhibit E to Debtors' Objection.

[6] Exhibit F to Debtors' Objection.

[7] Exhibit G to Debtors' Objection.

[8] Exhibit 10 to Debtors' Post Hearing Memorandum.

3

*HAL, Inc.*, 196 B.R. at 161; *In re Atanasov*, 221 B.R. 113, 117 (D. N.J. 1998) ("Courts may look to state law in order to determine whether a setoff has occurred, however, the granting or denial of the right to a setoff depends upon the terms of section 553, and not upon the terms of state statutes or laws."); *In re Tarbuck*, 318 B.R. 78, 81 (Bankr. W.D. Pa. 2004) ("The threshold question in every case involving an asserted right of setoff is the source and validity of the underlying right.").

To determine which state's law to apply, the Court turns to Delaware choice of law rules. *E.g., In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005); *In re Eagle Enterprises, Inc.*, 223 B.R. 290, 292 (Bankr. E.D. Pa. 1998) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941)) ("In most instances bankruptcy courts rely on the rule observed by federal district courts hearing diversity cases and use the choice of law rules of the forum state."). The Note includes a choice of law provision stating that it is governed by Texas law. Ferguson's action is a breach of contract claim brought in Texas state court, and arising from an employment agreement executed and performed in Texas. Therefore, the Court turns to Texas law to determine whether Ferguson has a right to setoff. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004) ("Under Delaware [choice of law rules], express choice of law provisions in contracts are generally given effect."); *Matter of Deemer Steel Casting Co., Inc.*, 117 B.R. 103, 107 (Bankr. D. Del. 1990) ("In cases sounding in contract, Delaware's conflicts of law rules require application of the law of the state with the most significant contacts."). Therefore, it is clear, and undisputed by the parties, that Texas laws of setoff applies.

Under Texas law:

5

purposes of Texas law and § 553.

****

"To establish its right to setoff under Section 553 of the Bankruptcy Code, the creditor must show mutuality of obligation. *In re Winstar Communications*, 315 B.R. 660, 662-63 (D. Del. 2004). "Mutuality of obligations is determined by state law." *In re Czyzk*, 297 B.R. at 409. Under Texas and federal law, "[m]utuality of obligation exists when debts are owing between the same parties in the same right or capacity." *E.g., Mullen v. Cheatham*, 1999 WL 1095917, *3 (Tex. App. 1999); *Brook Mays Organ Co., Inc. v. Sondock*, 551 S.W.2d 160, 166 (Tex. Civ. App. 1977); *In re Wilson*, 69 B.R. 960, 965 (Bankr. N.D. Tex. 1987); *see also In re Winstar Communications*, 315 B.R. at 662-63; *In re GPR Holdings, L.L.C.* 2004 WL 3007080, *4 (Bankr. N.D. Tex. 2004). "For mutuality to exist, each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987); *In re Taylor Motors*, 60 B.R. 760, 763 (Bankr. D. Nev. 1986) ("Mutuality of the debt and claim means that the creditor is indebted to the debtor who likewise owes a debt to the creditor . . .."). For setoff purposes, the mutuality requirement is strictly construed. *E.g., In re Bennett Funding Group, Inc.*, 212 B.R. at 212; *In re Clemens*, 261 B.R. 602, 606 (Bankr. M.D. Pa. 2001).

A triangular setoff occurs where "A attempts to offset an obligation owed by B against B's debt to C. Setoffs of this kind are not permitted under section 553." *In re KZK Livestock, Inc.*, 221 B.R. 471, 480 (Bankr. C.D. Ill. 1998); *In re HAL, Inc.*, 196 B.R. at 163 ("The general rule, however, holds that triangular setoffs among related parties do not meet the mutuality requirement."); *In re U.S. Aeroteam, Inc.*, 327 B.R. 852, 864 (Bankr. S.D. Ohio 2005)

7

to GRLP would compensate GRM for making the Loan.

The Debtors, however, argue that the debts are not mutual, asserting this situation presents an impermissible "triangular setoff," since Ferguson was employed by GRM, and the note was payable to GRLP. Alternatively, the Debtors argue that Ferguson, as a fiduciary of the Debtors, cannot effectuate a setoff.

A.    **Mutuality**

1.    **Identity of Ferguson's Employer**

The parties dispute whether GRM was Ferguson's employer, or whether Ferguson was employed collectively by the various entities of Garden Ridge, including GRLP.

The Debtors argue that the requisite mutuality does not exist, since Ferguson was employed by GRM, and the note was payable to GRLP. The Debtors rely primarily on Ferguson's paychecks and W-2 Form, which clearly state that "Garden Ridge Management, Inc." was Ferguson's employer. The parties do not dispute that GRM and GRLP were, at all times prior to filing, distinct legal entities.

Ferguson argues that despite the fact that GRM appeared on the paychecks and W-2 Form, GRM's payroll account was entirely funded and controlled by GRLP. Ferguson also notes that GRLP was the entity responsible for severance obligations of the Debtors. Ferguson notes that the Employment Agreement refers only to "Garden Ridge," and makes no mention of GRM, or any specific entity of the Debtors. Ferguson offers his own testimony that he was unaware of the specific entity that was his true employer. Finally, contemporaneously with the Note, Ferguson received a letter which states:

Contemporaneously with the execution of this letter, you are executing the Note,

9

against a debt it owes to the same entity."); *In re Sentinel Products Corp.*, 192 B.R. 41, 46 (N.D.

N.Y. 1996) (citing *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618

n.2 (2d Cir. 1989); *In the Matter of Elcona Homes Corp.*, 863 F.2d 483, 486-87 (7th Cir. 1988);

*Depositor's Trust Co. of Augusta v. Frati Enters.*, 590 F.2d at 379) ("a subsidiary's debt may not

be setoff against the credit of a parent or other subsidiary, or vice versa, because no mutuality

exists under the circumstances."); *In re KZK Livestock, Inc.*, 221 B.R. at 480 ("Thus, two

entities, even if related, may not aggregate their debts and claims for setoff purposes.  For

example, a subsidiary may not offset a debt to the debtor against a debt the debtor owes to

another related subsidiary···"); *In re Baja Boats, Inc.*, 1997 WL 811694, *7 (Bankr. N.D. Ohio

1997) ("The primary requirement of mutuality is that the relevant claim and debt must exist

between the same parties.  Therefore, two entities, even if related, may not aggregate their debts

and claims for setoff purposes."); *In re Hill Petroleum Co.*, 95 B.R. 404, 411-12 (Bankr. W.D.

La. 1988) (citing 4 COLLIER ON BANKRUPTCY § 553.04[2] at 553-19 (1988)); *Matter of*

*Fasano/Harriss Pie Co.*, 43 B.R. 864, 870 (Bankr. W.D. Mich. 1984) (citations omitted) ("The

same rule applies with a parent corporation and a wholly owned subsidiary.  Since an

intercorporate relationship is insufficient to meet the mutuality requirement in an offensive claim

of setoff by a member of the corporate family against a third party, it likewise is insufficient to

meet the mutuality requirement in a third party claim of setoff against a member of the corporate

family."); *In re Virginia Block Co.*, 16 B.R. 560, 562 (Bankr. W.D. Va. 1981) ("Furthermore, a

corporation may not setoff the right of an associated, wholly owned corporation, even though

local custom permits such a setoff.").

    This principle has also been applied in situations involving partners in partnerships.  *See*

11

contract law, where there was an express contractual agreement clearly evincing the intent of the parties to treat the parent and subsidiary as one entity.").

Therefore, the formal legal relationship between the parties herein presents an impermissible triangular setoff, as the required mutuality of the parties does not exist. To the extent that Ferguson argues that the entities operated as a single entity, and therefore should be considered to be as the same entity for setoff purposes, such arguments are addressed below.

### 2.  Whether GRM and GRLP Should Be Treated as One Entity

Ferguson argues that Garden Ridge, as a collective unit, operated in a manner such that the Debt and the Ferguson Claim involve the same entity. Therefore, Ferguson argues that the Court should disregard the fact that GRM and GRLP were separate legal entities. Texas law provides that in several broad instances, the corporate entity may be disregarded, including "1) when the corporation is the alter ego of its owners or shareholders; 2) when the corporation is used for illegal purposes; and 3) when the corporation is used as a sham to perpetrate a fraud. " *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629-30 (5th Cir. 1994) (citing *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993)).

> Among the reasons recognized in the past for disregarding the corporate fiction are: (1) when it is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where it is used to evade an existing legal obligation; (4) where it is employed to achieve or perpetrate a monopoly; (5) where it is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Carlson Mfg., Inc. v. Smith*, 2005 WL 2878033, *3 (Tex. App. 2005); *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986).

The purpose of disregarding the corporate entity in these instances is to prevent fraud,

13

that two separate corporations are distinct entities, the courts will not disregard the separate legal identities of corporations unless that relationship is used to defeat public convenience, to justify wrongs such as violation of the anti-trust laws, to protect fraud, or to defend crime."); *Tigrett v. Pointer*, 580 S.W.2d 375, 392 (Tex. Civ. App. 1978) ("The general rule prohibits disregard of the corporate entity by a court unless that corporate entity is used as a means of committing fraud or to justify wrong in the sense of a violation of law or of public policy."); *King v. Tubb*, 551 S.W.2d 436, 445 (Tex. Civ. App. 1977) ("As a general rule, the corporate entity will not be disregarded unless there are compelling reasons to disregard."). Texas courts have been particularly hesitant to disregard the corporate entity in cases involving contracts. *Mancorp, Inc. v. Culpepper*, 836 S.W.2d 844, 847-48 (Tex. App. 1992) ("[T]he overriding public policy necessary to disregard the corporate entity must be more stringent in contract cases than in tort cases because in contract cases the plaintiff has an opportunity to select the entity with which he deals as opposed to tort cases in which no such choice exists . . .. In such a situation, a court should not resort to the drastic exception to the general rule that the corporate entity must remain inviolate.").

Texas law places the burden of showing that the Court should disregard the corporate fiction on the party seeking to treat the entities as a single unit. *E.g., PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 2005 WL 1979102, *4 (Tex. App. 2005) ("The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation."); *Wortham v. Dow Chemical Co.*, 2005 WL 2786996, *4 (Tex. App. 2005); *Mancorp, Inc. v. Culpepper*, 836 S.W.2d at 847 (The "burden of proof is on the plaintiff to prove harm in order to pierce the corporate veil.").

15

*Bonner & Co., Inc.*, 572 S.W.2d 344, 348-49 (Tex. Civ. App. 1978) ("As a general rule, two or more corporations are separate and distinct legal entities, and the separate identity of each will not be disregarded in order to impose liability on one corporation for the acts of another corporation merely because of: a) overlapping stock ownership; b) a duplication of some or all of the directors or officers; or c) an exercise of the control that stock ownership gives to stockholders.").

To the extent that Ferguson argues that GRM is the "alter ego" of GRLP, Ferguson has not alleged that the Debtors maintained GRM and GRLP as separate entities for fraudulent purposes. Under Texas law, the alter ego doctrine requires a showing of fraud. *North American Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 119 (Tex. App. 2001) ("[T]he 'alter ego' theory generally involves proof of fraud, i.e., proof that the corporation is organized and operated as merely a tool or business conduit of another corporation. At a minimum, '[t]he plaintiff must prove that he has fallen victim to a basically unfair device by which [the subsidiary] has been used to achieve an inequitable result.'"); *see also In re Carrousel Motels, Inc.*, 160 B.R. 993, 1002 (Bankr. S.D. Ohio 1993) ("[T]he alter ego doctrine by its nature does not admit of mutuality; the doctrine may not be used as a shield. That is, one may not disregard corporateness unless there has been misuse of corporateness."); *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 398-99 (Bankr. D. Minn. 1985) ("Thus, as a matter of corporate law, without alleging fraud or some other wrong, Petco will not be allowed to disregard Pinion's corporateness to establish mutuality of obligation.").

Alternatively, Ferguson argues that GRM and GRLP were operated as a single entity, and therefore should be treated as such for setoff purposes. "Texas recognizes the 'single business

17

the same person, the two corporations 'were at all relevant times separate legal entities.' Hence,

the debts are not 'mutual' and may not be offset against each other."); *In re Fairfield Plantation,*

*Inc.,* 147 B.R. 946, 954-55 (Bankr. E.D. Ark. 1992) ("In light of the absence of evidence that

FAC was formed to defeat justice, perpetrate fraud, or to evade contractual or tort responsibility

this Court, applying Georgia law, finds that FAC has a separate corporate identity from that of

FPI. Accordingly, the party against which PEGI has a claim (FPI) is different from the party to

which PEGI owes a debt (FAC) and mutuality does not exist."). In this case, Ferguson could

maintain his state court action, and his legal rights would not be otherwise affected.

Therefore, Ferguson has not provided a persuasive basis to show that the Court should

ignore the fact that GRM and GRLP are distinct legal entities.

### 3.    Substantive Consolidation to Create Mutuality

Ferguson argues that the substantive consolidation of the Debtors created the necessary

mutuality. The Plan states,

> Nothing contained in this Plan or the Confirmation Order shall be deemed a
> waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other
> legal or equitable defense that the Debtors had immediately prior to the Petition
> Date that is not specifically waived or relinquished by this Plan.[12]

The Plan also states that

> On the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be
> substantively consolidated for all purposes related to the Plan, including, without
> limitation, for purposes of voting, confirmation, and distributions. . . .
>
> Such substantive consolidation shall not (other than for purposes related to the
> Plan) affect (i) the legal and corporate structure of the Reorganized Debtors . . ..[13]

---

[12]  Plan, at 36.

[13]  Plan, at 25-26.

19

this argument of the Debtors is not applicable in this instance. "[W]here a debt arises from a fiduciary duty or is in the nature of a trust, courts have held that there is no mutuality for setoff purposes. . . . In other words, setoff will not be permitted where granting it would have the effect of excusing or evading the [fiduciary] obligation." *In re Luz Intern., Ltd.*, 219 B.R. 837, 848 (B.A.P. 9th Cir. 1998) (citations omitted); *In re World Access, Inc.*, 324 B.R. 662, 685 (Bankr. N.D. Ill. 2005) (citing *Libby v. Hopkins*, 104 U.S. 303 (1881)) ("Where the liability of one claiming a set-off right arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts and claims does not exist, and such persons may not set-off a debt owing from the debtor against such liability."); *In re Tarbuck*, 304 B.R. at 721 ("For mutuality to exist, the debts must exist between the same parties in the same capacity, i.e., each must owe the other in his own name and not as a fiduciary."). "The rationale of this rule is simply that the liability arising from a fiduciary duty is entirely independent of the debt owing from the bankrupt." *Western Dealer Management, Inc. v. England, (In re Bob Richards Chrysler - Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir.1973).

The fact that one of the parties has a fiduciary duty in some context, however, does not necessarily preclude mutuality. *In re Fox Bean Co., Inc.*, 287 B.R. 270, 287 (Bankr. D. Idaho 2002) (citing 5 COLLIER ON BANKRUPTCY ¶¶ 553.03[3][b] and 553.03[3][c][ii]) ("the existence of a fiduciary relationship need not prevent mutuality"). A distinction must be drawn between different types of fiduciary relationships. "First, mutuality may be found if setoff would not violate the fiduciary obligation in question, as in the case of certain types of security deposits. Second, mutuality may exist if the party asserting the right of setoff is not the one acting as a fiduciary. Third, the rule does not prevent setoff if the obligations sought to be offset between

21

# Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:                                    In Proceedings Under Chapter 11

    GARDEN RIDGE CORPORATION,          Case No.:  04-10324
    *et al.*,

        Debtors.                    JUDGE RANDOLPH BAXTER

### JUDGMENT

In Delaware, in said District, on this _10th_ day of February, 2006.

A Memorandum Of Opinion And Order having been rendered by this Court in this

matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Ferguson's

motion for relief from stay in order to effectuate a setoff is not well premised and is hereby

denied.  Each party is to bear its respective costs.

IT IS SO ORDERED.

                RANDOLPH BAXTER
                UNITED STATES BANKRUPTCY JUDGE