## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE GARDEN RIDGE CORPORATION, *et al.*,  )

         Debtors.

)    Chapter 11
)    Bankruptcy Case 04-10324
)    Jointly Administered
)

_____)

### DANIEL FERGUSON,

**Appellant,**

v.

### GARDEN RIDGE CORPORATION, *et al.*

**Appellees.**

### CASE NO. 06-CV-00213 (GMS)

---

### APPELLANT DANIEL FERGUSON'S REPLY BRIEF ON APPEAL

---

**WILLIAM D. SULLIVAN, LLC**
William D. Sullivan (#2820)
4 East 8th Street, Suite 400
Wilmington, DE  19801
Tel:  (302) 428-8191
Fax:  (302) 428-8195

*Counsel for Appellant*
*Daniel Ferguson*

Dated:  August 11, 2006

## TABLE OF CONTENTS

SUMMARY OF REPLY ...................................................................................................1

1.    The Bankruptcy Court failed to recognize the Loan Agreement
      as a Binding Admission against the Debtor. ................................................4

2.    The Bankruptcy Court misconstrued the effect of the Debtor's
      Substantive Consolidation. .......................................................................7

3.    Appellant did not waive his right to an evidentiary hearing.......................11

4.    The Bankruptcy Court's failure to hold an evidentiary hearing
      was prejudicial to Appellant. ...................................................................14

5.    The Bankruptcy Court's failure to conduct a single business enterprise
      analysis was erroneous.............................................................................16

6.    No proof of improper purpose is required to apply the single business
      enterprise doctrine.................................................................................. 18

CONCLUSION..............................................................................................................20

## TABLE OF AUTHORITIES

*Carlson Mfg., Inc. v. Smith,*
179 S.W. 3d 688 (Tex.App. 2005)..........................................................................................passim

*Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16,
116 S. Ct. 286, 133 L.Ed. 2d 258 (1995)..................................................................................1

*FDIC v. Texas Bank of Garland,*
783 S.W.2d 604 (Tex.App. Dallas, 1989)..................................................................................5

*In re Cooper,*
147 B.R. 678 (Bankr.D.N.J. 1992) ..........................................................................................10

*In re Czyzk,*
297 B.R. 406 (Bankr. D. N.J. 2003) ..........................................................................................2

*In re Delta Airlines, Inc.,*
341 B.R. 439 (Bankr. S.D.N.Y. March 23, 2006) .......................................................................9

*In re Garden Ridge Corporation,*
338 B.R. 627 (Bankr.D.Del. 2006)...................................................................................passim

*In re Murray Industries, Inc.,*
125 B.R. 314 (Bankr.M.D. Fla. 1991) ..................................................................................9, 10

*In re Owens Corning,*
419 F.3d 195 (3rd Cir. 2005) .................................................................................................8, 10

*In re SLM International, Inc.,*
248 B.R. 240 (D.Del. 2000)....................................................................................................13

*National Plan Adm'rs, Inc. v. National Health Ins. Co.,*
150 S.W. 718 (Tex. App.-Austin 2004, pet. filed)................................................................16, 19

*Pardo v. Pacificare of Tex., Inc. (In re APF Co.)*
264 B.R. 344, 354 (Bankr. D. Del. 2001) ..............................................................................2, 9

*SSP Partners v. Gladstrong Investments (USA) Corp.,*
169 S.W.3d at 43...................................................................................................................15

## **SUMMARY OF REPLY**

The Appellees in their Answering Brief attempt to reverse the equitable principles on which setoff is based in an effort to support a decision of the Bankruptcy Court which was erroneous as a matter of law. The Answering Brief is replete with references to Appellant's setoff claim as an attempt to seek a "windfall" in his favor. [See e.g., Ans. Br. at p. 24: ("if substantive consolidation were to "create" mutuality as to Appellant's claim where it did not otherwise exist, it would clearly result in a windfall to Appellant, whose claim against the Reorganized Debtors is otherwise unsecured); see also, *Id* at p. 25, ("Such a result … would create a windfall to Ferguson.")]. Repetition of this argument does not make the point any more valid, however.

As was noted in the underlying Bankruptcy Court decision, setoff rights are recognized in bankruptcy to the same extent they are provided under state law. *Opinion at 4, In re Garden Ridge Corporation*, 338 B.R. 627 at 632,citing *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S. Ct. 286, 133 L.Ed. 2d 258 (1995).[1] The United States Supreme Court noted in *Strumpf* that "[t]he right of setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Id.* at 4, citing *Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed. 2d 258 (1995). As such, setoff exists to avoid the inequity the Debtors would foist on Mr. Ferguson: that he pay in full the $250,000 he owes pursuant to a note issued in connection with a loan agreement, while the Debtors merely pay him approximately 10% of the $250,000 severance

---

[1] Appellant's Opening Brief referred to the underlying decision of the Bankruptcy Court issued on February 10, 2006 as the *Opinion,* and it was attached to the Opening Brief as Exhibit C. It has since been published. References to the *Opinion* in this brief will cite the page number for both versions.

1

payment owed to him, or $25,000.[2]  Given the equal amounts owed by the Debtors to Mr. Ferguson and Mr. Ferguson to the Debtors[3], it is the Debtors who would receive the windfall if they succeed in denying Mr. Ferguson's setoff rights.

Appellees' Answering Brief—and its submissions to the Bankruptcy Court below—do not dispute the general standards for establishing setoff, as set forth in Appellant's Opening Brief and the Bankruptcy Court's *Opinion.* That is, section 553(a) of the Bankruptcy Code "recognizes and preserves rights of setoff where four conditions exist: (1) The creditor holds a claim against the debtor that arose before the commencement of the case; (2) The creditor owes a debt to the debtor that also arose before the commencement of the case; (3) The claim and debt are mutual; and (4) The claim and debt are each valid and enforceable." *Opinion* at 6, *Garden Ridge at 633,* citing 3 Collier on Bankruptcy P 553.01; *In re Czyzk,* 297 B.R. 406, 409 (Bankr. D. N.J. 2003); *Pardo v. Pacificare of Tex., Inc. (In re APF Co.)* 264 B.R. 344, 354 (Bankr. D. Del. 2001).

As noted in the *Opinion,* Appellees only challenge to Mr. Ferguson's setoff rights is to the mutuality of the claim and the debt. *Id* at 11. The parties agree that both debts arose pre-petition (satisfying the first two conditions for setoff) and the fourth condition-- the validity and enforceability of Mr. Ferguson's claim for severance benefits-- will be addressed at a separate time. *Opinion* at 6, *Garden Ridge* at 632. The Opinion, and this appeal, focuses solely on whether the third condition for setoff, mutuality of the obligations, is met.

---

[2] *See* Debtors First Amended and Corrected Disclosure Statement, Bankruptcy D.I. 1458, p. 8, showing the estimated recovery for unsecured creditors (Class 5 under the Plan) at 8.0 to 9.6% of the claim's value.
[3] Mr. Ferguson also has a claim for unreimbursed employment expenses, asserted in the amount of approximately $61,000, for a total claim of $310,000. (Proof of claim, Ex 7 to Movant's Post Hearing Brief, A019-A031).

On the issue of the mutuality of obligations, Appellant cited several fundamental errors by the Bankruptcy Court requiring reversal of its decision that Mr. Ferguson is not entitled to set off his obligations under the note against his claim for severance benefits. First, the Bankruptcy Court failed to recognize the Debtors' express acknowledgement of the mutuality of the obligations through its acknowledgement in the Loan Agreement which gave rise to the note that Garden Ridge LP was Mr. Ferguson's employer. [Opening Brief, pp. 12-14]. Second, the Bankruptcy Court failed to recognize that the Debtors substantive consolidation under their Plan of Reorganization mandates that all claims against any of the Debtors be merged into claims against Garden Ridge LP, which, as a matter of law, creates the mutuality required for setoff. [Opening Brief, pp 14-17].

The treatment of Mr. Ferguson's severance claim, and whether it is chargeable to Garden Ridge LP, is central to the arguments presented by both sides, since the note obligation was issued in favor of Garden Ridge LP. If the severance claim is chargeable to Garden Ridge LP as Mr. Ferguson's employer, mutuality exists to permit set off. Appellees contend that Mr. Ferguson was employed solely by Garden Ridge Management, Inc., and that the severance claim is chargeable solely to that entity. [Answering Brief, p.3]. As set forth more fully at the conclusion of this Reply, the severance claim is chargeable to Garden Ridge LP by proper application of the single business enterprise theory under Texas law, regardless of the impact of substantive consolidation.

A review of the specific arguments raised in Appellants Opening Brief and Appellees Answering Brief is set forth below, and demonstrates that the Bankruptcy Court's decision was erroneous as a matter of law.

## 1.   The Bankruptcy Court failed to recognize the Loan Agreement as a Binding Admission against the Debtor.

Appellant's Post-Hearing Brief to the Bankruptcy Court cited the binding

admission set forth in the Loan Agreement executed contemporaneously with the note as

proof that Garden Ridge LP was Mr. Ferguson's employer. [Appellant's Opening Brief,

pp. 18-20]. The language quoted as the admission stated:

> "Garden Ridge, L.P. (the "Company") is making the loan to you
> evidenced by the Note.  You are currently serving as an employee of the
> Company."         [*See* Op. Br., p.13; Loan Agreement attached as Ex.
> 2 to Movant's Post-Hearing Brief, A004-A005]

Appellant's Opening Brief noted that the Opinion, while specifically referencing the

language cited above, failed to recognize it as a binding admission or even discuss why

the statement does not qualify as an admission. [Op. Br., p. 14]. Appellees contend that

the Court addressed the language head-on [Ans. Br., p. 30]. A review of the

Memorandum Decision shows otherwise, and supports Appellant's view.

After quoting the language from the Loan Agreement set forth above, the Opinion

states:

> Ferguson's arguments on this point are misguided. Ferguson's
> subjective belief, however well founded, does not overcome the legal
> conclusion that the debts are not mutual."   [Opinion at 10, *Garden Ridge*
> at 635]

The error in the Court's analysis is plain. The Loan Agreement does not contain

Ferguson's subjective belief in any respect; it was written by the Debtors and signed by

one of its officers, Jane Arbothnot, the CFO of Garden Ridge Management, Inc., the

General Partner of Garden Ridge, LP. [Loan Agreement attached to Movant's Post

Hearing Brief, Ex. 2, A004-A005]. Mr. Ferguson's subjective beliefs do not factor into

the analysis at all. The Bankruptcy Court's failure to acknowledge this binding

4

admission made contemporaneously with Mr. Ferguson's note obligation constitutes reversal error.

In an attempt to distance itself from this admission, Appellees now claim that Jane Arbuthnot, despite holding the title of Chief Financial Officer, did not have the authority from the Board of Directors to sign the Loan Agreement. [Answering Brief, p. 30]. The claim of alleged lack of authority has no support in the Answering Brief, and must be summarily rejected. Appellant addressed the authority issue squarely in its Post-Hearing Brief, noting that "[u]nder Texas law, a corporation may act only through agents, and is bound by the acts of its officers while acting in the scope of their authority, either actual or apparent." Movant's Post-Hearing Brief at p. 19, citing *FDIC v. Texas Bank of Garland,* 783 S.W.2d 604, 606 (Tex.App. Dallas, 1989)  Appellees elected not to even address the Loan Agreement in their Post-Hearing brief, and made no "lack of authority" claim before the Bankruptcy Court.  Accordingly, they should not be permitted to make it now.

Mr. Ferguson's subjective belief as to the identify of his employer is a red-herring issue raised solely by the Appellees, in an apparent attempt to discredit Mr. Ferguson, and it has no bearing on the legal analysis to be employed in this matter. [*See* e.g. Appellees Answering Brief, p. 30, fn 20]. Mr. Ferguson never made any argument to the Bankruptcy Court, and does not so contend on appeal, that his subjective belief is a factor to be considered. All of the arguments presented to the Bankruptcy Court were based on the documentary evidence exchanged between the parties and the pleadings filed by the Debtors with the Bankruptcy Court.

5

It is only the Debtors who delved into Mr. Ferguson's subjective understanding in setting up a straw-man argument to refute. Appellees Answering Brief reviews the transcript of Mr. Ferguson's deposition transcript to point out that Mr. Ferguson did not know the legal distinction between Garden Ridge, LP and Garden Ridge, Management. Ans. Br., pp. 8-11. This use of the deposition testimony has no purpose. Mr. Ferguson also testified that during his employment with the Debtors, he referred to Garden Ridge as a single entity, without distinction between the various affiliated entities. [See Ferguson Depo. Transcript, p. 23, Debtors Post-Hearing Memorandum, Ex. 2]. For the most part, the documentary evidence bears this out. His employment agreement, dated January 26, 2001, states that he will join "Garden Ridge's Executive Committee as Senior Vice President – Supply Chain" with no further reference to a specific corporate entity. [See Appendix to Movant's Post-Hearing Brief, Ex. 7, A022]. His COBRA notice was received from "Garden Ridge", again without further distinction as to a specific corporate entity. [Appendix to Movant's Post-Hearing Brief, Ex. 6, A018]. Likewise, the proposed termination Agreement and General Release he received, dated September 12, 2003, defines his Employer as "Garden Ridge." [Id, Ex. 5, A013].

Thus, the evidence plainly supports Mr. Ferguson's subjective belief that he was employed by Garden Ridge in its entirety, not a single entity. However, as a matter of law, Mr. Ferguson's subjective view is not binding on the Appellees, which is why the Appellant's reference to it, and refuting of it, is utterly irrelevant.

Similarly, Appellees' reference to an acknowledgement by counsel, in response to a question from the Bankruptcy Court, that Garden Ridge LP and Garden Ridge Management were incorporated as distinct entities in Texas [Hearing Transcript, p. 59,

6

lines 13 through 18, attached to Appellant's Opening Brief, Ex.B], has no bearing on

which of them, or both, served as Mr. Ferguson's employer, or whether they acted as a

single enterprise. Mr. Ferguson argued to the Bankruptcy Court that by substantively

consolidating the Debtors, the Confirmation Order "ratified the fact that despite the fact

that separate entities were set up under Texas law the debtor's operations were joint and

consolidated and therefore there's no basis to distinguish between a claim against one

entity" [*Id*, Transcript at pp. 61-62]. Arguments relating to the single enterprise doctrine

are addressed more fully below. However, had the Bankruptcy Court properly

recognized the Debtors admission that Garden Ridge LP was Mr. Ferguson's employer,

no further analysis would have been required.

## 2.     The Bankruptcy Court misconstrued the effect of the Debtor's Substantive Consolidation.

At the November 16, 2005 hearing before the Bankruptcy Court, the Court did not

permit an evidentiary hearing but heard argument on the parties' legal positions. The

crux of the legal argument made by Appellant at the hearing was that substantive

consolidation of the Debtors' estates merged claims against any of the Debtors into

claims against Garden Ridge LP, thereby creating the mutuality necessary for set off.

[Op. Br., pp. 14-17]. Appellees raise two defenses to this argument: (1) substantive

consolidation cannot retroactively create mutuality for set off purposes [Ans. Br., p. 21-

22], and (2) the Debtors general reservation of defenses in the Plan defeats the impact of

substantive consolidation. [Ans. Br., pp. 19-20]. Both of these arguments are not

supportable and must be rejected.

7

To support the first proposition, Appellees refer to the Bankruptcy Court's statement that "there is no language in the Plan which would suggest that substantive consolidation should be given retroactive effect." [Ans. Br., p. 22, citing *Garden Ridge at 641*. This reference shows the Bankruptcy Court's fundamental misapprehension of the doctrine of substantive consolidation. As noted in the Opening Brief, the Third Circuit recently conducted an exhaustive review of the proper application and effect of substantive consolidation in its *Owens Corning* decision. Opening Brief at 16, citing *In re Owens Corning*, 419 F.3d 195 (3rd Cir. 2005). *Owens Corning* makes clear that substantive consolidation results in the claims of creditors against individual debtors morphing into claims against the consolidated survivor. *Owens Corning* at 206. The claims which are being consolidated are pre-petition claims.

In fact, substantive consolidation's effect is *solely* retroactive. It changes the treatment of claims which existed before the petition date, but does not have any impact on the reorganized debtors operations post-confirmation. Going forward, the Plan called for the Debtors to retain their individual corporate existence and all powers conferred under applicable state law.[4]   The continued separate existence of the reorganized Debtor entities outside of the Plan was even noted in the Opinion. *Opinion* at 19, *Garden Ridge* at 640-641. Thus, the Bankruptcy Court simply misconstrued the effect of substantive consolidation, and failed to appreciate that it affected only the treatment of pre-petition claims against the Debtors, not the Debtors post-confirmation operations.

Appellees attempt to prop up the Bankruptcy Court's determination that substantive consolidation had no retroactive effect by arguing it is consistent with the

---

[4] See First Amended Joint Plan of Reorganization, Bankruptcy D.I. 1467, p. 32, Section VIII.A. "Continued Corporate Existence."

8

recent setoff decision in *In re Delta Airlines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. March 23, 2006). [Ans. Br. pp.21-22]. In *Delta Airlines*, however, setoff was denied for an entirely different reason. In addressing the Greater Orlando Airport Authority's ("GOAA") attempt to set off its claim for lease rejection damages against pre-petition credits owed to the Debtors, the *Delta Airlines* court found that a lease rejection damage claim under section 365(g) and 502(g) of the Bankruptcy Code was not a prepetition claim against the debtor arising before the commencement of the case. Ans. Br. p.22, citing *Delta Airlines* at 446. Thus, set off in the *Delta Airlines* case was appropriately denied because the first of the four conditions required for setoff was not met, the condition requiring that the creditor's claim be a pre-petition claim. *See Pardo, supra*. Prong three, the mutuality requirement at issue here, was not addressed in the *Delta Airlines* decision.[5] Accordingly, *Delta Airlines* provides no support for the Bankruptcy Court's erroneous view that substantive consolidation has no retroactive effect.

Appellees continued reliance on the reservation of rights set forth in its plan to defeat substantive consolidation, based on language extracted from the *Murray Industries* decision is also misplaced. [Ans. Br., pp. 19-21, citing *In re Murray Industries, Inc.*, 125 B.R. 314 (Bankr.M.D. Fla. 1991)]. The *Murray Industries* case standards for the proposition that substantive consolidation does not destroy the defense of sovereign immunity which a *creditor* (in that case, the Florida Department of Revenue or "DOR") was entitled to assert prior to the bankruptcy. *Murray Industries* says nothing about what rights the Debtors may retain when their estates are substantively consolidated.

---

[5] As noted in the *Opinion*, "the first two elements of setoff are uncontested in this case. Both debts arose pre-petition." *Opinion* at 10.

9

In fact, the Court permitted Murray Industries to setoff the DOR's claim asserted against the "Murray Industries Debtor" against the fraudulent transfer claim the "MBASI Debtor" asserted against DOR, as a result of substantive consolidation. *Murray Industries* at 317. The Court stated "it would be grossly unfair and inequitable to permit DOR to share in the common assets of all these Debtors on the one hand and, on the other hand, use the defense of sovereign immunity as a shield against any claims asserted against it by the Debtors just because DOR filed its proof of claim only against Murray Industries and not against MBASI." *Id.,* at 317. Thus, the *Murray Industries* case recognized that the claims of both debtors merged and permitted setoff as a result of substantive consolidation.

This is the same result that the New Jersey Bankruptcy Court reached in *In re Cooper*, 147 B.R. 678 (Bankr.D.N.J. 1992). As noted in Appellant's Opening Brief, in the *Cooper* case an IRS tax lien against one debtor entity was extended to a lien against all the debtors as a result of the multiple debtors' substantive consolidation. [Op. Br., at 17]. *Cooper* and *Murray Industries* say the same thing that *Owens Corning* says: claims by and against separate debtors are merged into claims by and against a single entity as a result of substantive consolidation.

Appellees try to wriggle out of the *Cooper* holding by contending that the *Cooper* court recognized that substantive consolidation can be limited. [Ans. Br., p. 23] This, Appellees claim, justifies the application of the general reservation language contained in the Plan, which reservation the Bankruptcy Court referenced in its *Opinion.* [*Opinion* at 19, *Garden Ridge* at 640-641]. However, the general reservation in the Plan cannot trump the specific findings and specific legal effect of substantive consolidation. This

10

demonstrates the error caused by the Bankruptcy Court's misapprehension of the effect of substantive consolidation. If in fact substantive consolidation had no retroactive effect, the Court's analysis might be correct, as there would be nothing to disturb the pre-petition defenses reserved by the Debtor. But given that substantive consolidation requires a retroactive merging of pre-petition claims, it cannot permit the Debtors to reserve a claim of "separateness" as to these claims in the context of setoff. The Bankruptcy Court should have determined that the Plan reservation language had no effect in the context of Mr. Ferguson's setoff claim; it committed error by not doing so.

### 3. Appellant did not waive his right to an evidentiary hearing.

In attempting to argue that Appellant waived his right to an evidentiary hearing, Appellees reference portions of the transcript reflecting comments by counsel [Answering Brief, pp. 12-14], but omit a crucial portion of the hearing transcript.

First, it is clear that the Bankruptcy Court determined that no evidentiary hearing would be held despite the request of both counsel, as emphasized during the introduction of the matter:

Mr. Barry: Thank you, Your Honor.... Your Honor, the last and final item on the agenda is the motion of Daniel Ferguson to effect a setoff. Again, the parties have agreed to address solely the issue of whether or not Mr. Ferguson's claim qualifies for a setoff and we have both brought witnesses to court today. As indicated on the agenda both parties would like to present the Court with a very brief evidentiary presentation. [Hearing Transcript, p. 52, l. 19 to p. 53, l.2]

The Court: I don't recall either party pursuant to local rules requesting an evidentiary hearing on this matter by setting forth a need for time beyond that which is typically allowed with contested matters. Is that correct, Mr. Barry." [Transcript, p. 53, l. 6-9]

Mr. Barry: Your Honor, we didn't expressly request additional time from the Court, but I will say that in our agenda we indicated that we would be—we were requesting that we be able to put on evidence and oral argument.

11

> The Court: I think local rule has to be respected. And that having not been respected, I'll just hear argument from counsel. [Transcript, p. 53, Appellant's Ex. B]

Thus, it was the Court who determined that there would not be an evidentiary

hearing on November 16, 2005, not the Appellant. After hearing argument from counsel,

the following exchange occurred.

> The Court: Gentlemen, I'm going to reverse my earlier comment. I want to set this matter over for an evidentiary hearing because I think I have more questions than I have answers forthcoming at this point. And I realize that both of you have indicated that you would prefer to have the Court rule on just your arguments, but otherwise if I have to make specific findings they have to be made on evidence or unless the parties can agree on documents they wish to submit to the Court with mention of the evidence and you can index them accordingly. I can't take them in that fashion. But otherwise I think you're trying to show me evidence at this point that may not have been attached to your respective papers. And that could only present some difficulty. Mr. Sullivan.
>
> Mr. Sullivan: Your Honor, if Your Honor does feel it's appropriate to see evidence of how they acted pre-petition them we would be glad to present evidence at an evidentiary hearing.
>
> The Court: Thank you. Take two minutes to conclude your arguments this morning.          [Transcript at 63-64, Appellant's Ex. B]

Appellant's counsel made concluding arguments with the understanding that an

evidentiary hearing was to be scheduled. After hearing argument from both sides, the

Court inexplicably then changed its mind and ordered the parties to submit simultaneous

post-argument briefs. [*Id*, Transcript p. 72]. As to documentary evidence, the Court

advised they could be submitted with the additional briefing to take place. [*Id.*,

Transcript p. 73] Thus, the lack of an evidentiary hearing was based on a unilateral

decision by the Bankruptcy Court, not the relinquishment of the right to a hearing by

Appellant. The full transcript reflects that Appellant's counsel simply complied with the

Court's instructions during the hearing and with respect to post-hearing briefing,

Waiver requires the intentional relinquishment of a known right. *See In re SLM International, Inc.*, 248 B.R. 240 (D.Del. 2000). Appellant's counsel understood, and made argument at the November 16, 2005 hearing with the understanding that to the extent the Court not determine whether setoff was appropriate as a matter of law (based on the debtor's substantive consolidation), evidence would be presented at a subsequently-scheduled evidentiary hearing. Appellant never consented to presenting evidence by submission with the post-hearing briefs, with no opportunity to rebut evidence submitted by the Appellees. Rather, Appellant was instructed to follow that procedure at the direction of the Court.

As noted in Appellant's Opening Brief, the requirement that documentary evidence be submitted as attachments to the post-hearing briefs made it impossible to present the evidence as to the Debtor's pre-petition obligations in a coherent fashion. With respect to the evidence that the Debtors operated as a single entity, and that Garden Ridge LP was Mr. Ferguson's employer and responsible for his severance claim, Appellant was left to describe the documentary evidence in writing, just as he did in his Opening Brief on Appeal [See Op. Br., pp 18-23]. The difficulty of this task, including, *inter alia,* reviewing the Debtor's payroll account to show that Garden Ridge LP paid Mr. Ferguson, is plainly evident from a review of those sections. The inability to present this evidence in cross-examination of the Debtor's witness was prejudicial to Mr. Ferguson, as the evidence applied directly to the determination of which of the Debtors are Mr. Ferguson's employer under applicable law.

13

## 4.    The Bankruptcy Court's failure to hold an evidentiary hearing was prejudicial to Appellant.

Appellee's contend that at worst, the Bankruptcy Court's denial of an evidentiary hearing was harmless error. [Answering Brief, pp. 16-18]. However, in asserting that the totality of the facts support one conclusion—that no mutuality exists—Appellees cite to seven alleged undisputed facts listed in bullet points on page 27 of its Answering Brief. Three of those facts are taken from the Affidavit of Holly Shafer, the Debtor's 30(b)(6) witness who was present in the Courtroom on November 16, 2006, when the evidentiary hearing was denied. The Shafer affidavit was Exhibt 1 to the Debtors' Post-Hearing Memorandum. Thus, the denial of the evidentiary hearing not only deprived Mr. Ferguson of the opportunity to cross examine the witness, but also prevented him from offering any rebuttal or comment to the affidavit in his simultaneous post-hearing submission.

The denial of the right of cross-examination is crucial. With respect to the three alleged "undisputed" facts in the Shafer affidavit, Mr. Ferguson presented evidence in his post-hearing memorandum to refute all three. For example, the Shafer affidavit says Garden Ridge LP has no employees [Sh. Aff., ¶8, Ex. 1 to Debtors' Post Hearing Memorandum]; conversely, the Loan Agreement issued to Mr. Ferguson states that he is an employee of Garden Ridge LP [Ex. 2 to Movant's Post Hearing Brief, A004-A005]. The Shafer affidavit contends that Garden Ridge LP pays no one a salary [Sh. Aff., ¶ 8]; the Debtors Monthly Operating Reports however, show that all bank account activity was conducted by Garden Ridge LP and that the Payroll Account was in the name of Garden Ridge LP. [Op Br., pp 22-23]. The Shafer Affidavit states that Garden Ridge LP pays no one benefits, including severance [Sh. Aff., ¶ 8]; Garden Ridge LP's Statement of

14

Financial Affairs filed with the Bankruptcy Court, however, shows that it was responsible
for severance payments to senior executives. [Op. Br., p.20].

These documents place the veracity of the Shafer Affidavit into seriously
question. Yet without the opportunity to cross-examine Ms. Shafer at a hearing, those
discrepancies could not be highlighted for the Court, nor any admissions obtained. The
denial of an evidentiary hearing, coupled with the simultaneous submission of briefs,
denied Mr. Ferguson any opportunity to rebut Ms. Shafer's testimony, such that the
Appellees now claim the testimony is undisputed. [Answering Brief. P. 27].

Moreover, the issue of which entity paid the Debtors' employees is a critical part
of the mutuality analysis. The Bankruptcy Court acknowledged that "Texas recognized
the single business enterprise doctrine to prevent an entity from relying upon corporate
form to evade an existing debt or legal obligation." *Opinion* at 17-18,*Garden Ridge* at
639-640, citing *SSP Partners v. Gladstrong Investments (USA) Corp.*, 169 S.W.3d at 43.
The Court then listed eight factors to be considered in the single business enterprise
analysis, including:

(1) common employees;
(2) common offices;
(3) centralized accounting;
(4) payment of wages by one corporation to another corporations employees;
(5) common business name;
(6) services rendered by the employees of one corporation on behalf of another
corporation;
(7) undocumented transfers of funds between corporations; and
(8) unclear allocation of profits and losses between corporations...

*Id,* citing *Carlson Mfg, Inc. v. Smith*, 179 S.W.3d 688.

The payment of the Debtors' employees by Garden Ridge LP is relevant to the fourth
factor in the analysis. Consequently, the Court's failure to permit the introduction of
evidence and cross-examination of witnesses on issues relevant to its determination of

15

whether the Debtors operated as a single enterprise is necessarily prejudicial to
Appellant.

## 5. The Bankruptcy Court's failure to conduct a single business enterprise analysis was erroneous.

Appellant's Opening Brief outlined in substantial detail the evidence presented to
the Bankruptcy Court to demonstrate that the Debtors operated as a single business
enterprise and disregarded the corporate form, such that Garden Ridge LP should be
considered Mr. Ferguson's employer and should be responsible for his severance pay
claim. [Op Br. Pp 17-23]. The Bankruptcy Court *Opinion* recognized that the evidence
presented by Appellant "may warrant application of these doctrines in other contexts,"
but nevertheless declined to apply it with respect to setoff. [*Opinion* at 18, *Garden Ridge*
at 640]. The Court stated that the use of the doctrine to create mutuality for setoff
purposes "does not fall within the recognized categories in which Texas courts have
determined that the corporate entity should be disregarded," apparently because it did not
find a case specifically permitting it. [Id]. Appellees' brief asserts that the Court was
correct to decline this analysis. [Ans. Br., p.32].

This argument simply misses the mark. First, no case was cited in the Bankruptcy
Court's Opinion or in Appellees' Answering Brief as precedent for *precluding* the use of
the single business enterprise doctrine to establish mutuality for purposes of setoff.
Second, Texas law does permit the single business enterprise doctrine to impose liability
against another entity. See *Carlson Mfg., Inc. v. Smith*, 179 S.W. 3d 688 (Tex.App.
2005) at 693 citing *National Plan Adm'rs, Inc. v. National Health Ins. Co.*, 150 S.W. 718,
744 (Tex. App.-Austin 2004, pet. filed) (recognizing doctrine as a valid equitable means

16

of piercing the corporate veil to impose liability). This would permit the single enterprise doctrine to be used to impose liability on Garden Ridge LP for Mr. Ferguson's claim for severance benefits, despite the Debtors designation of Garden Ridge Management, Inc., as his putative employer.

To be clear, the *Carlson* case referenced in the Bankruptcy Court *Opinion* expressly recognizes that the single enterprise doctrine has been used by Texas courts to find that a master servant relationship existed for the purposes of imposing liability. *Opinion* at 18, *Garden Ridge* at 640. This is precisely what Appellant argued to the Bankruptcy Court. [See Movant's Post-Hearing Brief, pp. 13-14]. Unfortunately, the Court never conducted the analysis set forth in *Carlson* to determine if Garden Ridge LP should be held liable for a severance claim that the Debtors claim is the responsibility of Garden Ridge Management.

The Bankruptcy Court erred in not applying the single business enterprise doctrine to Appellant's claim that Garden Ridge LP was appropriately deemed Mr. Ferguson's employer. The standards for application of the single enterprise doctrine were plainly set forth in the *Opinion*. *Opinion* at 18, *Garden Ridge* at 640. Had the Court conducted this analysis, it would have concluded that the Debtors were a single enterprise and that Garden Ridge LP is responsible for Mr. Ferguson's severance claim. The Bankruptcy Court acknowledged that based on the evidence presented, the application of this doctrine may be warranted "in other contexts." In addition, in an earlier part of the Opinion, the Court noted that on the basis of the Declaration of Donald Martin submitted in support of the substantive consolidation provisions of the Plan, it determined at confirmation that there is a substantial identity and inseparable relationship between the

17

Debtors. [*Opinion* at 16, *Garden Ridge* at 638-639]. This finding was based on many of the same factors to be reviewed with respect to the single business enterprise doctrine.

Furthermore, once the Bankruptcy Court concluded that Garden Ridge LP was responsible for Mr. Ferguson's severance benefits, it necessarily would have concluded that the four conditions for setoff were met, since mutuality of obligation Garden Ridge LP and Appellant would exist. The failure to reach that conclusion is the direct result of the Court's failure to conduct the single business enterprise analysis recognized under Texas law.

### 6. No proof of improper purpose is required to apply the single business enterprise doctrine.

It should also be noted that in the single business enterprise cases, there is no requirement of a separate showing that the Debtors were engage in some sort of fraud, deceit, illegality, subterfuge or misuse in forming or maintaining a corporate form. Appellees contend the Bankruptcy Court Opinion holds that such proof is required. [Ans. Br., p. 31]. While the Bankruptcy Court references these factors in certain corporate fraud or "alter ego" cases it discusses in the *Opinion*, these cases are not relevant to the facts in this case, nor to the analysis which Appellant contends the Court should have performed.

Neither the *Carlson* case cited by the Bankruptcy Court nor the single corporate enterprise cases reviewed in the *Carlson* decision hold that an allegation of an improper purpose is required in establishing a single business enterprise. Rather, it is simply the eight factor analysis the Court outlined at page 18 of the *Opinion*, as referenced above. To the extent the Court merged the requirements of separate legal theories in the *Opinion*,

18

it was not correctly citing Texas law on the single business enterprise doctrine as set forth in *Carlson* and its progeny. To the extent the Appellees argue that setoff is properly denied based on the failure to allege fraud or improper purpose [Ans. Br., pp. 31-32], they are simply wrong. By its very nature, the single corporate enterprise doctrine analysis reviews the reality of the operations of the entities at issue, not the purpose for their formation.

This is made clear in the *National Plan Administrators* case cited in *Carlson, supra. National Plan Administrators, Inc., v Nat. Health Ins. Co.*, 150 S.W.3d 718 (Tex.Ct.App. –Austin 2004). In the *National Plan Administrators* case, the Court upheld a jury finding that a third-party administrator and a marketing agent for insurance policies operated as a single enterprise business (although incorporated separately), and assessed liability for the breach of duty by the third-party administrator against the marketing agent. *National Plan Administrators,* 150 S.W.3d at 724. The legal basis for this imposition of liability was set forth as follows: "Under the "single business enterprise" doctrine, when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose." Id at 744. Thus, the single business enterprise doctrine is intended to evaluate the nature of the constituent entities operations, not their intent. Appellees arguments to the contrary are properly ignored.

19

## CONCLUSION

WHEREFORE, for the foregoing reasons, the decision of the Bankruptcy Court

should be reversed and judgment entered in favor of Appellant on his claim for setoff.


Dated:  August 11, 2006
        Wilmington, DE

WILLIAM D. SULLIVAN, LLC

By _____
        William D. Sullivan (No. 2820)
        4 East 8th Street, Suite 400
        Wilmington, DE 19801
        ph: (302) 428-8191
        fax: (302) 428-8195

        Attorney for Appellant

20

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing *Appellant Daniel Ferguson's*

*Reply Brief on Appeal* to be served via hand delivery this 11th day of August, 2006, on the

following parties:

Joseph M. Barry, Esq.
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

William D. Sullivan (No. 2820)